**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Edward James HALYE, Appellant.**

Superior Court of Pennsylvania.

Argued May 13, 1998.

Filed Oct. 6, 1998.

Albert J. Flora, Jr., Wilkes–Barre, for appellant.

Peter Paul Olszewski, Jr., District Attorney and Frank P. Barletta, Assistant District Attorney, Wilkes–Barre, for Commonwealth, appellee.

Before McEWEN, President Judge, and DEL SOLE, KELLY, POPOVICH, FORD ELLIOTT, JOYCE, MUSMANNO, ORIE MELVIN and SCHILLER, JJ.

DEL SOLE, Judge:

Following a jury trial, Appellant was convicted of two counts of involuntary deviate sexual intercourse, two counts of indecent assault, one count of corruption of minors and one count of endangering the welfare of children. Thereafter, the trial court initiated procedures to determine whether to classify Appellant as a "sexually violent predator," under the Registration of Sexual Offenders Act, 42 Pa.C.S.A. §§ 9791 – 9799.6 [the Act.] Following a report by the Sexual Offenders Assessment Board and a hearing, the court held that Appellant did not rebut the Act's presumption and, therefore, he was a "sexually violent predator." At sentencing the court also found Appellant was a "high risk dangerous offender" under 42 Pa.C.S.A. § 9714[1]. In accordance with the mandatory minimum sentencing requirements of § 9714 and the mandatory maximum sentencing requirement of a life sentence under the Act, 42 Pa.C.S.A. § 9799.4, Appellant was directed to serve an aggregate term of imprisonment of 138 months to life. Appellant filed a post-sentencing motion challenging the constitutionality of the Act. The court denied it and this appeal followed. Finding merit in two of Appellant's claims, we vacate his sentence and remand for resentencing.

The questions presented for our review are whether the evidence is sufficient to sustain Appellant's conviction for endangering the welfare of children and whether the Act is constitutional. The constitutional challenge made by Appellant is based on a number of specific attacks on provisions of the Act, which are alleged to be violative of the Pennsylvania and United States Constitutions.[2] Because we conclude that the Act improperly places the burden of persuasion on a defendant in violation of federal procedural due

process and is, therefore, unconstitutional, we need not examine the other constitutional questions raised by Appellant.

Before turning to Appellant's constitutional question, we will address his concern that the evidence presented by the Commonwealth was insufficient to sustain his conviction for endangering the welfare of children. The elements of this criminal offense are set forth in 18 Pa.C.S.A. § 4304, which provides:

**Offense defined.** -A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

■ Appellant specifically alleges that he was not the parent or guardian of the child-victim and the Commonwealth did not establish that he was supervising the welfare of the child at the time of the assault. In reviewing a sufficiency of the evidence claim, we view the evidence, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth. *Commonwealth v. Rose*, 463 Pa. 264, 344 A.2d 824 (1975). A mere conflict in the testimony does not render the evidence insufficient, *Commonwealth v. Verdekal*, 351 Pa.Super. 412, 506 A.2d 415 (1986), because it is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence. *Commonwealth v. Whitfield*, 475 Pa. 297, 380 A.2d 362 (1977).

■ At trial the victim's mother testified that Appellant, who was her second or third cousin, had come to her home with her former mother-in-law for a visit. The witness stated that her husband, her son and her

---

**1.** Appellant makes no challenge in this appeal to his classification as a "high risk dangerous offender" or to the mandatory sentencing provisions applicable to this classification, therefore such matters will not be considered in this appeal.

**2.** Appellant lists the following constitutional challenges: 1.) whether the adjudication and notification requirements of the Act violate the double jeopardy clauses of the Pennsylvania and United States Constitution; 2.) whether the Act violates substantive due process; 3.) whether the

sexually violent predator provisions are unconstitutionally vague; 4.) whether the sexually violent predator provisions subject defendants to cruel and unusual punishment prohibited by the state and federal constitutions; 5.) whether the Act violates procedural due process because it fails to afford the defendant any opportunity to be heard and because it imposes the burden of persuasion on the defendant; and 6.) whether the notification requirements of the Act violate state and federal rights to privacy.

daughter were also at home that evening. The children were playing in a bedroom while the adults were in another part of the home. At one point, Appellant indicated that he had to go to the bathroom. When he did not promptly return, and the children became quiet, the mother testified that she became concerned and walked back to the bedroom to check on them. Her daughter was seen sitting on the edge of the bed playing a game by herself. Upon opening a closet door, Appellant was discovered with his head placed near her son's exposed privates.

Despite the criminal nature of Appellant's actions, which support his convictions for involuntary deviate sexual intercourse, indecent assault and corruption of minors, there is insufficient evidence of Appellant's role as a supervisor or guardian of the child to support the endangering the welfare of children conviction. No testimony was presented to indicate that Appellant was asked to supervise the children or that such a role was expected of him. Rather, Appellant was a visitor in the child's home. The child's parents were home and were supervising their children. This is evidenced by the mother's remarks that her concern for the children led her to check on them and to discover the assault by Appellant.

■ There is insufficient evidence to sustain a conviction for child endangerment where the Commonwealth fails to prove any statutory element. *Commonwealth v. Pahel,* 456 Pa.Super. 159, 689 A.2d 963 (Pa.Super.1997). In this matter, viewing the evidence in the light most favorable to the Commonwealth, we conclude that it failed in its burden of proving that Appellant was in the position of supervising the children at the time of the assault. Accordingly we reverse Appellant's conviction for endangering the welfare of children.

Appellant's conviction on the charges of involuntary deviate sexual intercourse and indecent assault led to the court's initiation of procedures to determine if Appellant was a "violent sexual predator." The court's ultimate finding and imposition of sentence, which included a mandatory maximum term of life imprisonment under the Act, caused Appellant to question its constitutionality. Among the claims made is that the Act improperly shifts the burden of persuasion to the defendant, in violation of federal procedural due process rights.

The Act, often referred to as Pennsylvania's Megan's Law, contains certain registration and notification provisions, as well as the mandatory maximum sentencing requirement, for those deemed violent sexual predators. Individuals convicted of certain specified sexually violent offenses are to be assessed by a state board composed of psychiatrists, psychologists and criminal justice experts, after conviction, but before sentencing. 42 Pa.C.S.A. § 9794(a) and § 9799.3. The Act declares that a presumption shall be applied in making this assessment. It specifically states:

An offender convicted of any offense set forth in section 9793(b)[listing certain sexually violent offenses] shall be presumed by the board and the court to be a sexually violent predator. This presumption may be rebutted by the offender by clear and convincing evidence at a hearing held in accordance with subsection (e).

42 Pa.C.S.A. § 9794(b).

Subsection (e) carries the presumption to the hearing stage of the proceeding. Within 60 days from the date of conviction, the board is required to submit a report to the court. 42 Pa.C.S.A. § 9794(d). Upon receipt of the report, and prior to sentencing, the court is directed to hold a hearing to determine if the offender is a sexually violent predator. 42 Pa.C.S.A. § 9794(e). After review of all the evidence presented at the hearing the court is to decide whether the presumption has been rebutted. *Id.*

Those not classified as "sexually violent predators" are required to register with the state police upon their release. The information gathered is then provided to the chief law enforcement officer of the police department of the municipality in which the offender will reside. 42 Pa.C.S.A. § 9793.

Those classified by the court as "sexually violent predators" are subject to certain registration and notification requirements under the Act which are much broader in scope

than the registration and notification requirements applied to sex offenders who are not given this classification. 42 Pa.C.S.A. §§ 9795, 9797 and 9798. In addition, sexually violent predators are subject to a mandatory maximum sentence of life under 42 Pa. C.S.A. § 9799.4(a), mandatory counseling under § 9799.4(b), and mandatory life imprisonment if subsequently convicted of a sexually violent offense under § 9799.4(c). Thus, there is a discernable difference between those who are sex offenders and those classified by the court as "sexually violent predators." *Van Doren v. Mazurkiewicz*, 695 A.2d 967 (Pa.Cmwlth.1997).

This Court has had occasion to consider the constitutional validity of the registration provisions of the Act. *Commonwealth v. Mountain*, 711 A.2d 473 (Pa.Super. 1998). In *Mountain*, the sentencing court agreed with the report of the state board that the appellant did not fit the profile of a sexually violent predator, but nevertheless he remained subject to the registration procedures applicable to sexual offenders. The appellant challenged these procedures arguing that he was deprived of both federal and state procedural due process when a hearing was not held prior to the imposition of the registration requirements. We rejected the claim noting that this Court, in *Commonwealth v. Gaffney*, 702 A.2d 565 (Pa.Super.1997), held that the registration provisions of the Act are non-punitive. The panel in *Mountain* ruled that absent the deprivation of a liberty or property interest, a substantive or procedural due process claim will not survive. *Mountain*, 711 A.2d at 480.

In *Gaffney* a panel of this Court rejected a constitutional challenge to the Act which alleged that it violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions. *Gaffney*, 702 A.2d 565. In dismissing this claim, the panel relied heavily on the decisions of two United States Third Circuit cases, *Artway v. Attorney General*, 81 F.3d 1235 (3d Cir.1996), and *E.B. v. Verniero*, 119 F.3d 1077 (3d Cir.1997). In those decisions the courts were reviewing constitutional challenges to New Jersey's Megan's Law. The *Gaffney* court utilized a three-prong test formulated by the circuit court decisions to determine whether a legislative enactment qualifies as a punishment. It considered whether: "(1) the legislature's actual purpose is punishment, (2) the 'objective' purpose is punishment, or (3) the effect of the statute is so harsh that 'as a matter of degree' it constitutes punishment." *Gaffney* 702 A.2d at 567.

The *Gaffney* court noted that this comprehensive test was applied by the Third Circuit in *Artway*, which concluded that the registration provisions in the New Jersey version of Megan's Law were not punishment and therefore *the ex post facto* clause of the United States Constitution was not violated. *Id.* While remarking that these federal decisions are not binding upon this Court, the *Gaffney* court ruled that it is appropriate for this Court to follow these Third Circuit decisions absent a ruling by the United States Supreme Court. *Id.* Accordingly it held that given the substantive identity of the Pennsylvania and New Jersey statutes, and absent evidence that the effects of the two statutes differ, the registration provisions do not violate the *ex post facto* Clause of the United States Constitution.

A like result was achieved by the Commonwealth Court in *Van Doren v. Mazurkiewicz*, 695 A.2d 967 (Pa.Cmwlth.1997). Therein the appellant claimed that the registration provisions of the Act constitute additional punishment and therefore violate the double jeopardy and *ex post facto* clauses of the United States Constitution. The court noted that the Third Circuit Court in *Artway* rejected this same challenge and that the analysis set forth by the Third Circuit compelled a similar conclusion in its case with respect to Pennsylvania's version of Megan's Law. *Id.* at 975.

█ The question we address in this case concerns not the registration requirements, but rather the presumption imposed on those undergoing evaluation and characterization by a board and a court when considering whether to classify an offender as a "sexually violent predator." The specific claim is that these provisions violate the procedural due process protections of the United States Constitution. However, much like the courts in *Mountain, Gaffney* and *Van Doren*, which

relied on the Third Circuit Court decisions concerning the *ex post facto* claims, we too have the benefit of the Third Circuit Court's ruling on the procedural due process issue.

In *E.B. v. Verniero*, 119 F.3d 1077 (1997), a procedural due process claim was made in addition to *ex post facto* and double jeopardy claims. The appellants in *Verniero* claimed due process requires that the state rather than the registrant carry the burden of persuasion at a Megan's Law hearing and that the state demonstrate the propriety of the classification by clear and convincing evidence. *Id.* at 1106.

The *Verniero* court recognized that the appellants' claim of entitlement to procedural due process falls under the provision of the Fourteenth Amendment of the United States Constitution, which provides that "no person shall be deprived of life, liberty or property without due process of law." U.S. Const. Amend. XIV. The court noted that the appellants had a liberty interest granted by state law of which they could not be deprived without being accorded the process due under the Fourteenth Amendment. *Verniero* at 1105. In considering what process is due, and whether a shift in the burden of persuasion can be tolerated, the court considered three distinct factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such an interest through the procedures used; and (3) the value of the government's interest, including the function involved and the burdens that an additional or substitute procedural requirement would entail. *Id.* at 1106 (*citing Mathews v. Eldridge*, 424 U.S. 319, 334–335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

The court first considered the private and public interest involved with the state's notification procedure for those classified as moderate (Tier 2) or high (Tier 3) risks. The notifications involved with a Tier 2 registrant under the New Jersey law includes " 'law enforcement, school and community organization alert,' issue[d] to registered schools, day care centers, summer camps, and other community organizations which care for children or provide support to women and where individuals are likely to encounter the sex offender." *Id.* at 1082 (*citing* N.J.S.A. 2C:7–8c(2)). Tier 3 registrants are subject to community notification in which members of the public who are likely to encounter the registrant are notified. *Id.*

The court found that under this system the private interest affected by the notification system is very substantial for it "puts the registrant's livelihood, domestic tranquility and personal relationships with all around him in grave jeopardy." *Id.* at 1107. It further noted the state has a compelling interest in protecting its citizens by giving prompt notifications to those who may potentially be harmed, while at the same time it has an interest in ensuring that its classification and notification system is fair and accurate. *Id.* After examining these competing interests the court concluded that the burden of proof must remain with the state if the risk of error will be materially reduced without materially impairing the state's ability to secure a prompt determination and without the imposition of substantial new administrative burdens. *Id.*

In assessing the risk of error, the *Verniero* court observed the fact-finding function involved is made difficult because sex crimes generally have a limited number of witnesses which creates the need for credibility determinations. *Id.* at 1108. Further, the issues are resolved in a proceeding in which the rules of evidence are not applied and the proceedings have a strict timetable. Thus, it reasoned that the assignment of the burden of persuasion to the prosecutor will substantially reduce the risk of an erroneous outcome. *Id.*

Finally it considered whether an allocation of the burden of persuasion to the state would materially impair the state's ability to receive a prompt determination or impose new administrative burdens on it. *Id.* After concluding there was an absence of any substantial economic or other burden to the state, it ruled that due process requires that the prosecutor shoulder the burden of persuasion. *Id.* at 1109.

The *Verniero* court's rationale can be readily applied when considering Appellant's constitutional challenge to the Act. Although the Act differs in many respects from the

New Jersey version of Megan's Law, the differences only create further support for the conclusion that it is appropriate for the burden of persuasion to be with the prosecution. Like the New Jersey statute, the Pennsylvania Act and its notification procedures for those classified as sexually violent predators, impacts significantly on the registrant's ability to maintain a private life.

The Act directs that the chief law enforcement officer in the municipality which the predator resides create a notice which includes the offender's name, his classification as a sexually violent predator, his address, the offense for which he was convicted, and a picture, if available. 42 Pa.C.S.A. § 9798(a). It is to be distributed to neighbors, the director of the children and youth service agency in the county, the superintendent of schools in the area, the director of each licensed day care and preschool program, and the president of any nearby college or university. 42 Pa.C.S.A. § 9798(b). Furthermore the Act has a significant impact on the offender's freedom as a result of its mandatory maximum sentencing requirement of life imprisonment. 42 Pa.C.S.A § 9799.4(a).

Like the *Verniero* court, in assessing the potential risk of error, we must look to the procedure utilized in determining whether an offender is a sexually violent predator and, therefore, subject to the registration, notification and mandatory sentencing requirements of the Act. This is a fact-finding function made after an initial assessment of a board. As with the New Jersey statute, time restraints are involved since the board's assessment must be made no later than 60 days from the date of the offender's conviction. 42 Pa.C.S.A § 9794(d). The board is asked to consider factual matters such as the offender's age, and prior record and the victim's age, but it is also required to determine whether the offender displayed "unusual cruelty" and whether there was a "pattern of abuse." 42 Pa.C.S.A. § 9794(c). Thus, a subjective decision about the offender's dangerous nature must necessarily be made. And, although the offender has a right to call witnesses and cross-examine witnesses, the rules and procedure followed in a trial do not apply. Thus the concern identified in *Verniero*, of materially reducing the risk of error by placing the burden of persuasion with the prosecutor, is equally at issue here.

Finally, we perceive no material impairment on the state's ability to secure a prompt determination by requiring it to shoulder the burden of persuasion. Thus, following the lead of the Third Circuit Court in *Verniero*, we too find due process requires that the prosecution carry the burden of persuasion.

The Third Circuit has carefully weighed this exact question as it applies to the New Jersey statute. While its decision is not binding, we find it is appropriate for this Court to follow its ruling in view of the like purposes and requirements of the Acts. In fact, the effect of the Pennsylvania Act is more severe since it imposes even more restrictions on an offender's liberty with its maximum mandatory life imprisonment provisions. We therefore hold that the Act's provisions which require an offender to rebut a presumption which arises if the offender has been convicted of certain enumerated crimes, violates the Fourteenth Amendment to the United States Constitution.

Following the lead of the court in *Verniero* we also find that due process requires the prosecution to prove the facts by clear and convincing evidence, rather than merely by a preponderance of the evidence. As the Third Circuit stated:

> Because 'the possible injury to the individual [registrant] is significantly greater then any possible harm to the state,' the registrant, consistent with due process, cannot 'be asked to share equally with society the risk of error. [Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) ] 441 U.S. at 427[, 99 S.Ct. 1804]. It necessarily follows that the Due Process Clause requires that the state prove its case by clear and convincing evidence in a Megan's Law proceeding.

*Verniero*, 119 F.3d at 1077.

This high standard of proof is constitutionally required where, as here, the designation of one as a "sexually violent predator" is separate and distinct from both the trial and sentencing and entails a fact-finding function.

As noted, the designation has severe results and this measure of due process must be afforded an offender to protect against erroneous outcomes.

For these reasons we conclude that the due process clause of the federal constitution is violated by the provisions of the Act which requires the offender to rebut a presumption and which do not impose upon the prosecution the burden of persuasion by clear and convincing evidence. As a consequence, we strike as unconstitutional § 9794 of Title 42 and all remaining sections of the Act which refer to the designation of a "sexually violent predator." Accordingly, we reverse Appellant's conviction for endangering the welfare of children and we vacate the judgment of sentence on Appellant's remaining convictions and remand for resentencing absent application of the provisions of the Act.

McEWEN, President Judge, files a concurring statement.

FORD ELLIOTT and JOYCE, JJ., file concurring and dissenting opinions.

ORIE MELVIN, J., files a concurring opinion.

McEWEN, President Judge, concurring:

Sexual abuse and violence poses so critical a challenge to the well being of our American society as to equal the drug plague. Once again, in opinions proffered by the authors of the majority position and of the concurring and dissenting views, this Court achieves admirably, for one finds in those expressions such insightful jurisprudential perspectives as will enable the Pennsylvania Supreme Court – and, perhaps, once again, require the Legislature – to address this perverse violation of the sanctity of the person.

The Legislature and the Executive have in the Sexual Offenders Act declared a particular abhorrence of these crimes. The majority and concurring expressions find such crimes no less repugnant as each concludes that the Act falls short of constitutional compliance. The dissent urges that the Act has attained constitutionality and thereby concludes that trial judges may presently rely upon the present act for the imposition of the severe sentences of which sex offenders are so worthy.

Thus, amid all the dialogue upon constitutionality, a stark unanimity of conclusion pervades this Court, and its colleagues in the other branches, namely, that the violent sexual abuser and offender must be severely punished and subjected to prolonged confinement. As a result, it may not be doubted that should our Supreme Court view the present Act as of unconstitutional hue, the Legislature will assuredly move promptly to remedy any constitutional infirmity.

FORD ELLIOTT, Judge, concurring and dissenting:

I join in that part of the majority's opinion which vacates appellant's conviction for endangering the welfare of children. However, I respectfully dissent from the majority's determination that 42 Pa.C.S.A. § 9794 is unconstitutional.

Initially, I too thought that the rebuttable presumption imposed upon appellant pursuant to § 9794(b) had serious due process implications. However, I am now firmly convinced that the Pennsylvania Act, a subchapter of the Sentencing Code, satisfies due process. "Although sentencing proceedings must comport with due process, the convicted defendant need not be accorded 'the entire panoply of criminal trial procedural rights.'" *Commonwealth v. Wright*, 508 Pa. 25, 35–36, 494 A.2d 354, 359–360 (1985), *affirmed sub nom. McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), quoting *Gardner v. Florida*, 430 U.S. 349, 358 n. 9, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). It has always been "the province of the legislature to determine the punishment ... for criminal conduct." *Wright, supra* at 38–40, 494 A.2d at 361 (citation omitted). Moreover, it is normally within the legislature's power to assign burdens of production and persuasion in criminal matters, so long as its decision does not offend fundamental principles of justice. *McMillan*, 477 U.S. at 85, 106 S.Ct. 2411.

Under the provisions of § 9794,[1] the status of an offender as a sexually violent predator occurs after the defendant's conviction of a crime of sexual violence specifically identified by the legislature in § 9793(b). The legislature has, unremarkably, determined that anyone convicted of a crime involving sexual violence can be considered a sexually violent predator. Once a defendant has been convicted of a sexually violent crime, the court orders an assessment of the offender's status by the State Board to Assess Sexually Violent Predators (as constituted in § 9799.3). The assessment board considers the various factors set forth in § 9794(c) and provides the court with a written report as to its assessment of the offender. These factors have a striking similarity to the information contained in any pre-sentence report,[2] specifical-

1. The relevant provisions of § 9794 are as follows:

§ 9794. Designation of sexually violent predators

(a) Order for assessment.—After conviction, but before sentencing, a court shall order a person convicted of a sexually violent offense specified in section 9793(b) (relating to registration of certain offenders for ten years) to be assessed by the board. The order for an assessment shall be sent to the administrative officer of the board within ten days of the date of conviction.

(b) Presumption.—An offender convicted of any offense set forth in section 9793(b) shall be presumed by the board and the court to be a sexually violent predator. This presumption may be rebutted by the offender by clear and convincing evidence at a hearing held in accordance with subsection (e).

(c) Assessment.—Upon receipt from the court of an order for an assessment, two members of the board as designated by the administrative officer of the board shall conduct an assessment of the offender to determine if the offender is a sexually violent predator. Such an assessment shall include, but not be limited to, such factors as:

(1) Age of the offender.
(2) Offender's prior criminal record, sexual offenses as well as other offenses.
(3) Age of the victim.
(4) Whether the offense involved multiple victims.
(5) Use of illegal drugs by the offender.
(6) Whether the offender completed any prior sentence and whether the offender participated in available programs for sexual offenders.
(7) Any mental illness or mental disability of the offender.
(8) The nature of the sexual contact with the victim and whether the sexual contact was part of a demonstrated pattern of abuse.
(9) Whether the offense included a display of unusual cruelty by the offender during the commission of the crime.
(10) Any behavioral characteristics that contribute to the offender's conduct.

All State, county and local agencies shall cooperate in providing the necessary information as requested by the board in connection with the required assessment.

(d) Submission of report by board.—The board shall submit a written report containing its assessment to the court no later than 60 days from the date of conviction of the defendant. Where the board members disagree on the assessment of the offender, both members shall submit a written report to the court.

(e) Court review of findings.—Upon receipt of the board's report, the court shall determine if the offender is a sexually violent predator. This determination shall be made based on evidence presented at a hearing held prior to sentencing and before the trial judge. The offender and district attorney shall be given notice of the hearing and an opportunity to be heard, the right to call witnesses, the right to call expert witnesses and the right to cross-examine witnesses. In addition, the offender shall have the right to counsel and to have a lawyer appointed to represent him if he cannot afford one. After a review of all evidence presented at this hearing, the court may determine whether the presumption arising under subsection (b) has been rebutted and shall set forth this determination on the sentencing order. A copy of the sentencing order containing the determination shall be submitted to the Pennsylvania Board of Probation and Parole and the Department of Corrections.

42 Pa.C.S.A. § 9794.

2. Pursuant to Pa.R.Crim.P. 1403(3) "the pre-sentence investigation report shall include information regarding the circumstances of the offense and the character of the defendant sufficient to assist the judge in determining sentence." In Commonwealth v. Martin, 466 Pa. 118, 351 A.2d 650 (1976), our supreme court noted with approval the ABA project on Minimum Standards of Justice essential and adequate elements of a pre-sentence report.

26. '(A) a complete description of the offense and the circumstances surrounding it, not limited to aspects developed for the record as part of the determination of guilt;
(B) a full description of any prior criminal record of the offender;
(C) a description of the educational background of the offender;

ly, the circumstances surrounding the crime and the defendant's psychological evaluations. In fact, the Comment to Pa.R.Crim.P. 1403, governing the preparation and basic content of pre-sentence reports references § 9791–9799.5. As with any pre-sentence report, fact-finding is necessary and the report is prepared at the direction of and for the aid of the court in determining the defendant's status for sentencing and notification purposes.

Although a defendant may object to matters contained in a pre-sentence report, the Commonwealth has no burden to prove any matter contained in the report. This is true even when a sentence enhancement hinges on additional facts not otherwise in evidence in the guilt-determining phase. *McMillan, supra* (finding by sentencing court of visible possession of a firearm in commission of crime is a constitutional sentencing enhancement factor and not an element of the crime which required proof beyond a reasonable doubt), *affirming Wright, supra* ; *Commonwealth v. Allen*, 508 Pa. 114, 118–19, 494 A.2d 1067, 1070 (1985) (evidence of prior violent felony conviction pursuant to 42 Pa.C.S. § 9714 (repealed) could be introduced at sentencing to allow imposition of increased sentence for repeat violent offenders). In each of these cases, the defendants raised a due process concern similar to the one addressed in *E.B. v. Verniero*, 119 F.3d 1077 (1997), relied upon by the majority in this case, regarding the evidentiary burden.

Undeniably, the risk of re-offense is at the heart of the Pennsylvania legislation. The Legislative Findings and declaration of policy set forth in § 9791 make it clear that the entire Act is directed to protecting communities against the risks posed by a particular class of sexual offender: those who commit crimes of sexual violence. However, unlike the New Jersey law at issue in *Verniero*, our Legislature has not made risk of re-offense a fact-finding determination under § 9794. As a review of § 9794(c), *supra*, indicates, the factors considered by the court and the assessment board are strikingly similar to the factors considered in any pre-sentence investigation. In contrast, the New Jersey statute requires prosecutors to utilize extensive guidelines and to assess the risk of re-offense. It is the prosecutors who weigh such factors as whether the offender is under supervision or receiving counseling, therapy, or treatment; whether the offender's physical condition makes re-offense unlikely; and whether the offender's conduct was characterized by compulsive or repetitive behavior. *Verniero*, 119 F.3d at 1083, citing N.J.S.A. § 2C:7–8b. The Third Circuit found it particularly significant that *prosecutors* assessed the risk of re-offense; that the offender bore the burden of persuasion in a summary *in camera* proceeding potentially held years after conviction; and that the court's review was limited to deciding only whether the prosecutors selected the correct Tier classification. Within the context of the New Jersey hearing, the offender's ability to test the prosecutors' determination was severely limited, as was his ability to call and confront witnesses.

(D) a description of the employment background of the offender, including any military record and including his present employment status and capabilities;

(E) the social history of the offender, including family relationships, marital status, interests and activities, residence history, and religious affiliations;

(F) the offender's medical history and, if desirable, a psychological or psychiatric report;

(G) information about environments to which the offender might return or to which he could be sent should probation be granted;

(H) supplementary reports from clinics, institutions and other social agencies with which the offender has been involved;

(I) information about special resources which might be available to assist the offend-er, such as treatment centers, residential facilities, vocational training services, special educational facilities, rehabilitative programs of various institutions to which the offender might be committed, special programs in the probation department, and other similar programs which are particularly relevant to the offender's situation;

(J) a summary of the most significant aspects of the report, including specific recommendations as to the sentence if the sentencing court has so requested.'

ABA Project on Minimum Standards of Justice, Standards Relating to Probation, § 2.3 (Approved Draft, 1970). See also, Advisory Council of Judges of the National Probation and Parole Association, Guides for Sentencing, 33–47 (1957).

*Martin, supra* at n. 26, 351 A.2d at 658 n. 26.

Additionally, to the degree that risk of re-offense is always an issue in *any* sentencing proceeding, I do not believe a defendant confronted with a Megan's Law determination is entitled to a heightened form of procedural due process. A defendant's liberty interest is no more threatened by the Megan's Law registration, notification, and maximum sentence provisions than it is by any other mandatory incarceration provision. *See Allen, supra* at 120–21, 494 A.2d at 1071, quoting *Wright, supra* at 38–40, 494 A.2d at 361 ("The liberty interest of a defendant facing a sentencing proceeding pursuant to [an enhanced sentencing provision] is similar to that of other convicted defendants awaiting sentence.").

I find a helpful analogy in the Sentencing Guidelines promulgated by our Legislature. 42 Pa.C.S.A. §9721. The Legislature developed these Guidelines based on the research of criminologists, sociologists, psychologists, public policy analysts, and others·involved in the criminal justice system. These Guidelines provide a court with a consistent starting-point, a presumption if you will, when sentencing a particular defendant convicted of a particular crime, and take into account the gravity of the offense and the defendant's prior record. The court may then order a pre-sentence investigation report, which evaluates the factors noted *supra*. At the sentencing hearing, the defendant may challenge the accuracy of the report, and, at the court's discretion, may call witnesses to testify as to his good character, or to other mitigating circumstances. The court then exercises its discretion and imposes a sentence, either within or outside the Guidelines, so long as it is not greater than the statutory maximum for the offense.

Likewise, under the Megan's Law provision of the Sentencing Code, the legislature has determined, after consulting with experts in criminal justice and human psychology, that the starting point for violent sexual offenders is a presumption that they will offend again. The idea that the board should presume sexually violent predator status based on a conviction for a sexually violent crime is a reasonable starting point. The court then orders the board to assess the particular offender, pursuant to § 9794(a) and (c). After receiving the board's assessment, the court then holds a full and complete hearing, at which the offender is entitled to an opportunity to be heard on the issue of whether he is a sexually violent predator.[3] The court then exercises its discretion and finds either that the offender is not a sexually violent predator, and is therefore only subject to the registration provisions, *Commonwealth v. Mountain*, 711 A.2d 473 (Pa.Super.1998), or that he is a sexually violent predator, in which case he is also subject to the notification and maximum sentence provisions.

The *Verniero* court and the majority hold, however, that the determination of sexually violent predator status is a fact-finding function; and to reduce the risk of error, the burden of proof must be on the prosecution by clear and convincing evidence. For the reasons that follow, I disagree.

In *McMillan*, the Supreme Court upheld the constitutionality of the Pennsylvania Mandatory Minimum Sentencing Act of 1982. This statute required a mandatory minimum sentence to be imposed if the sentencing court found by a mere preponderance of the evidence that the defendant visibly possessed a firearm in commission of the offense. This fact was not an element of the underlying crime. In making such a finding, the sentencing judge could consider the evidence introduced at trial and any additional evidence offered by the defendant or the Commonwealth at the sentencing hearing. The defendant argued that to satisfy due process, this fact must be found by at least clear and convincing evidence. The Supreme Court, "[h]aving concluded that States may treat 'visible possession of a firearm' as a sentencing consideration rather than an element of a

---

**3.** Interestingly, not all individuals who commit crimes of sexual violence are ultimately "sexually violent predators" under the Pennsylvania Act. Rather, the Act defines a sexually violent predator as a person who has been convicted of an enumerated offense and who has been found to be a sexually violent predator under § 9794(e) *"due to a mental abnormality or personality disorder* that makes the person likely to engage in predatory sexually violent offenses." 42 Pa. C.S.A. § 9792 (emphasis added).

particular offense," rejected this due process claim:

> Sentencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all. See *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). *Pennsylvania has deemed a particular fact relevant and prescribed a particular burden of proof. We see nothing in Pennsylvania's scheme that would warrant constitutionalizing burdens of proof at sentencing.*

*McMillan*, 477 U.S. at 91–93, 106 S.Ct. 2411 (emphasis added) (footnote omitted). *McMillan* cited with approval *United States v. Davis*, 710 F.2d 104, 106 (3d Cir.1983) (collecting cases), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 505, 78 L.Ed.2d 695 (1983), which rejected a due process challenge to the federal 'dangerous special offender' statute, 18 U.S.C. § 3575. This statute allows courts to increase sentences if they find by a preponderance of the evidence that the defendant is a dangerous special offender.

Just as voluntary possession of a firearm was a 'sentencing consideration' in *McMillan*, I believe the defendant's status as a sexually violent predator is a 'sentencing consideration' here. In *McMillan*, the court astutely noted that "the Pennsylvania Legislature did not change the definition of any existing offense. It simply took one factor that has always been considered by sentencing courts to bear on punishment—the instrumentality used in committing a violent felony—and dictated the precise weight to be given that factor if the instrumentality is a firearm." 477 U.S. at 89–90, 106 S.Ct. 2411. Naturally, a limited degree of fact-finding is

necessary for the court to determine whether the enhancement should apply. Similarly, in this case the Legislature has taken one factor that has always been considered when sentencing: namely, the risk posed to society by a certain class of criminal, and has meted out certain consequences if the court finds that the defendant falls within that class.

Even the *Verniero* court recognized the difference between the hearing provided by the New Jersey statute and the due process requirements in sentencing proceedings, addressed by *McMillan*:

> Here, however, we are not dealing with sentencing. Sentencing occurs during and is part of the criminal proceeding; its purpose is to specify the sanction to be imposed as a result of one's conviction by proof beyond a reasonable doubt. A Megan's Law hearing, by contrast, is a civil proceeding that stands apart from the criminal proceeding in which one was convicted and sentenced. See *C.A.*, 679 A.2d at 1164. Moreover, as we have discussed, the factual determinations required in a Megan's Law hearing are of greater complexity than those typically involved in sentencing. Accordingly, we conclude that it is entirely consistent with McMillan to require a higher standard of proof in a Megan's Law proceeding.

*Verniero*, 119 F.3d at 1111 n. 29.[4]

I recognize that in this case it was the offender who was assigned a higher evidentiary burden to rebut the presumption that he is a sexually violent predator. However, since I can find nothing that would specifically preclude such a presumption at sentenc-

---

**4.** *Verniero* analogized the New Jersey proceedings to the civil proceedings in *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979*)*, and *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Those cases held that the 'clear and convincing evidence' standard applied where the state sought involuntary commitment to a mental institution and involuntary termination of parental rights, respectively. Importantly, *McMillan* distinguished *Addington* and *Santosky* as follows:

> Quite unlike the situation in those cases, criminal sentencing takes place only after a defendant has been adjudged guilty beyond a reasonable doubt. Once the reasonable-doubt standard has been applied to obtain a valid

conviction, 'the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him.' *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). *As noted in text, sentencing courts have always operated without constitutionally imposed burdens of proof;* embracing petitioners' suggestion that we apply the clear-and-convincing standard here would significantly alter criminal sentencing, for *we see no way to distinguish the visible possession finding at issue here from a host of other express or implied findings sentencing judges typically make on the way to passing sentence.* *McMillan*, 477 U.S. at 92 n. 8, 106 S.Ct. 2411 (emphasis added).

ing, I cannot conclude that it is unconstitutional. The presumption arises from the fact of a conviction, not from any burden of persuasion at sentencing. The Commonwealth has already met its burden of persuasion in securing the conviction on which the offender's status is automatically based. As to whether the offender may be required to rebut the presumption by clear and convincing evidence, I refer to the *McMillan* court's caveat regarding constitutionalizing burdens of proof at sentencing. Our Legislature has deemed a particular fact relevant, the conviction of a sexually violent offense, and prescribed a particular burden of proof to the offender to relieve himself of the more severe consequences of his actions. Because the Act merely provides specific consequences under certain designated circumstances (as the Legislature does in many other sentencing contexts), I find no constitutional infirmity.

Even if the Act were not a sentencing statute, however, I would find no due process violation here. In *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), the Court found the Colorado Sex Offenders Act unconstitutional for its lack of due process protections. The defendant was convicted of a sex offense carrying a ten-year maximum sentence. However, the trial court, pursuant to the Act, subjected the defendant to a psychological examination without a hearing or right of confrontation. This examination was designed to help the court determine whether the defendant constituted, *inter alia,* a threat of bodily harm to the public. Based on the results of the examination, the court sentenced defendant to an indeterminate term of one day to life. The Supreme Court, in an opinion by Justice Douglas, first reaffirmed the general proposition that "the Due Process Clause of the Fourteenth Amendment did not require a judge to have hearings and to give a convicted person an opportunity to participate in those hearings when he came to determine the sentence to be imposed." *Id.* at 606, 87

S.Ct. 1209. However, the Court then found that the psychological hearing was a separate criminal proceeding on a distinctly new factual issue leading to separate criminal punishment:

> The case is not unlike those other recidivist statutes where an habitual criminal issue is 'a distinct issue' (*Graham v. West Virginia*, 224 U.S. 616, 625, 32 S.Ct. 583) on which a defendant 'must receive reasonable notice and an opportunity to be heard.' *Oyler v. Boles*, 368 U.S. 448, 452, 82 S.Ct. 501, 7 L.Ed.2d 446; *Chandler v. Fretag*, 348 U.S. 3, 8, 75 S.Ct. 1. Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed.

*Specht*, 386 U.S. at 610–611, 87 S.Ct. 1209.[5] The Court struck down the Colorado Act, not because it was an unconstitutional exercise of legislative authority, but because it lacked any procedural due process safeguards.

*Specht* also discussed, with approval, *Gerchman v. Maroney*, 355 F.2d 302 (3d Cir.1966), which invalidated an almost identical Pennsylvania statute, the Barr–Walker Act. In *Gerchman*, the Third Circuit determined that due process was required at Barr–Walker proceedings because they represented a separate and distinct criminal proceeding on a new factual matter, rather than a simple sentencing proceeding resulting from the conviction:

> [Defendant's due process] rights therefore were violated by a determination made at a hearing at which the only evidence against him was the Commissioner's report to the court containing ultimate findings of fact based upon reports of a 'confidential' psychiatric examination and a probation investigation. Neither the Commissioner nor those who reported to him appeared at

---

5. *Specht* distinguished the statute at issue in *Minnesota v. Probate Court*, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940), where "in a proceeding to have a person adjudged a 'psychopathic personality' there was a hearing where he

was represented by counsel and could compel the production of witnesses on his behalf." *Specht*, supra at 610, 87 S.Ct. 1209, citing *Minnesota*, 309 U.S. at 275, 60 S.Ct. 523.

the hearing. Petitioner had no opportunity to confront them, much less to cross-examine them regarding the findings of the Commissioner or the unsworn reports of the investigations on which they were based. *Gerchman*, 355 F.2d at 309. The court emphasized that the basis of punishment was "an essentially *independent* criminal offense" – namely, a determination that the defendant constitutes a threat of harm to the public. *Id.* at 311 (emphasis added). Conversely, in *U.S. v. Davis, supra,* the Third Circuit upheld the Federal Dangerous Special Offender Status Act, 18 U.S.C. § 3575(b), noting that it afforded all the procedural protections required by *Specht* : a hearing, counsel, compulsory process, cross-examination of witnesses, and findings on the record to allow meaningful appellate review.[6] *Davis*, 710 F.2d at 106–107. Finally, in *McMillan, supra,* the Supreme Court held that *Specht* did not require the Commonwealth to prove facts at sentencing by clear and convincing evidence. The court noted that in *Specht*, "the defendant had a right to be present with counsel, to be heard, to be confronted with and to cross-examine the witnesses against him, and to offer evidence of his own." *McMillan*, 477 U.S. at 88–89, 106 S.Ct. 2411.

Returning to § 9794, and evaluating it in line with the dictates of *Specht, supra,* and *Gerchman, supra,* I believe it is in the *court* review of the findings of the board that Pennsylvania stands apart from New Jersey and the concerns of *Verniero.* Unlike the New Jersey Megan's Law hearings at issue in *Verniero*, the court in Pennsylvania, before applying either the registration and notification procedures to a particular offender or imposing the mandatory maximum sentence, must allow very specific due process. Both the defendant and the Commonwealth

are provided notice of the hearing, and an opportunity to be heard on the matters contained in the assessment report. There is a right to call and cross-examine witnesses without restriction, and the right to present expert witnesses. The offender also has the right to court-appointed counsel. After a full and complete hearing, the trial court must determine, considering all the evidence and the board's assessment, whether the presumption has been rebutted that because the offender committed a sexually violent offense, he should be sentenced as a sexually violent predator. All the due process required by *Specht* is already provided by the Pennsylvania Act. As set forth *supra,* I suggest this is ample due process.

I believe the toughest issues involving so-called "Megan's Law" legislation are the ones previously addressed by this court and ratified in this appeal; specifically, finding that the registration and notification provisions of the Act are non-punitive in nature and serve a substantial and important interest of the Commonwealth in protecting its citizens from the risks associated with a particular type of offender. Once we are satisfied that appellant's substantive constitutional rights are not implicated with respect to these claims, then pursuant to § 9794, we are left with nothing more than a sentencing statute and the due process considerations relevant to sentencing proceedings. I do not believe a challenge to procedural due process at a sentencing proceeding can carry the day.

I have little doubt that were we only considering whether the mandatory maximum sentence for sexually violent predators was constitutional, we would have little trouble dismissing the due process claim and upholding the authority of Legislature to design sentencing enhancements.[7] This conclusion should not be different with respect to regis-

---

6. *Davis* rejected the defendant's argument that due process required all findings made by the sentencing judge to be based on proof beyond a reasonable doubt. The court upheld the preponderance standard utilized under the statute. *Davis* held that *Specht* and *Gerchman* do not require proof at sentencing beyond a reasonable doubt, and noted that the standard of proof question was not at issue in those cases. *Davis*, 710 F.2d at 107 n. 1.

7. In *Almendarez–Torres v. U.S.*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the Supreme Court held that a recidivist sentencing enhancement which increased the *permissible* maximum to life imprisonment was not unconstitutional. Based on this analysis, I can see no practical distinction between increased penalties, which allow a *permissive* maximum of life imprisonment and a *mandatory* maximum of life imprisonment.

tration and notification procedures, especially because we have determined them to be civil in nature and non-punitive. The fact that these provisions, for purposes of appellant, apply in the context of a sentencing proceeding does not change that result. *See* 42 Pa.C.S.A. § 9721(b) ("the court shall follow the general principle that the sentence imposed should call for confinement ·that is *consistent with the protection of the public,* the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.") (emphasis added). As decided by *Mountain,* supra, *Commonwealth v. Gaffney,* 702 A.2d 565 (Pa.Super.1997), appeal granted, 551 Pa. 307, 710 A.2d 605 (1998), *Artway v. Attorney General,* 81 F.3d 1235 (3d Cir.1996), and *Verniero,* supra, such registration and notification requirements meet constitutional scrutiny. Moreover, the inclusion of civil consequences for convictions of certain crimes is not impermissible. *See Commonwealth v. Wingait Farms,* 547 Pa. 332, 690 A.2d 222 (1997) (in rem civil forfeiture following conviction on a drug offense was not excessive and therefore not punitive), cert. denied sub nom. *Reitz v. Pennsylvania,* —— U.S. ——, 118 S.Ct. 98, 139 L.Ed.2d 53 (1997); *Krall v. Commonwealth of Pennsylvania Department of Transportation,* 682 A.2d 63 (Pa.Commw.1996) (license suspension for a conviction under 75 Pa.C.S. § 3731 is a remedial sanction and civil in nature).

Based on the foregoing, I firmly believe that the Pennsylvania Registration of Sexual Offenders Act meets constitutional muster. I find the sentencing procedures under the Pennsylvania Act to be very different procedurally from the law at issue in *Verniero,* and more akin to the enhanced sentencing provisions of *McMillan.* I also rely upon the Supreme Court's admonition that we not constitutionalize burdens of proof in sentencing proceedings. Moreover, the Legislature was very careful to draft the legislation to afford the offender all the due process protection to which he would be entitled in a proceeding as directed by such decisions as *Specht* and *Gerchman.* For these reasons, I do not find

"a clear, palpable and plain demonstration that [§ 9794] violates a constitutional provision[,]" *Mountain,* 711 A.2d at 475, and would uphold the constitutionality of the Act.

JOYCE, Judge, concurring and dissenting:

I agree with the majority's conclusions regarding the constitutionality of 42 Pa.C.S.A. § 9794 and join in this part of the majority opinion. However, as I believe that the evidence was sufficient to sustain Appellant's conviction for endangering the welfare of children, I respectfully dissent as to this issue.

In determining whether the Commonwealth has met its burden of proof, the test to be applied is: [w]hether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Valette,* 531 Pa. 384, 388, 613 A.2d 548, 549 (1992) (citations and quotation marks omitted).

A person commits the crime of endangering the welfare of a child if he is a parent, guardian or other person supervising the welfare of a child under 18 years of age and knowingly endangers the child by violating a duty of care, protection and support.[1] 18 Pa.C.S.A. § 4304(a). In applying this statute, this Court has held that the Commonwealth satisfies its evidentiary burden by proving that: (1) the accused is aware of his or her duty to protect the child; (2) the accused is aware that the child is in circumstances that

---

1. It is undisputed that Appellant was not the parent or guardian of the victim. Accordingly, my analysis will focus on the supervision element.

could threaten the child's physical or psychological welfare; and (3) that the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare. *Commonwealth v. Martir*, 712 A.2d 327, 328–329 (Pa.Super.1998).

Appellant asserts that the evidence is inadequate because he was not asked to "supervise" the welfare of the victim. Appellant's Brief at 12. While the majority accepts this position, *see* Majority Opinion, *ante* at 765, the statute does not identify explicit parental request for supervision as an element of the crime. Nor would I read this requirement into the statute.

The appellate courts have recognized that section 4304 is a juvenile statute which is basically protective in nature and designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. *Commonwealth v. Mack*, 467 Pa. 613, 617, 359 A.2d 770, 772 (1976). *Commonwealth v. Ogin*, 373 Pa.Super. 116, 540 A.2d 549, 553 (Pa.Super.1988) (*en banc*). The statute therefore must be given meaning by reference to the common sense of the community and the broad protective purposes for which it was enacted. *Commonwealth v. Mack*, 467 Pa. at 618, 359 A.2d at 772; *Commonwealth v. Ogin*, 540 A.2d at 553. The term "supervise" is defined to mean "to oversee with the powers of direction and decision the implementation of one's own or another's intentions." Webster's Third New International Dictionary 2296 (1976). *See also* Black's Law Dictionary 1438 (6th ed.1990) (defining supervise as to have general oversight over, to superintend or to inspect). In essence then, supervision entails oversight of and the power to direct the actions of another. Utilizing this definition, the evidence sufficiently proved Appellant's supervision of the welfare of the victim.

The evidence presented at trial established that Appellant was the cousin of the victim's mother. N.T. 1/20/97 at 67. Appellant came to the victim's residence to visit. *Id.* at 67–68. Appellant, who was apparently speaking with the adults, excused himself and went to the bathroom. *Id.* at 69.

After using the bathroom, Appellant went into the bedroom where the victim and his sister were playing. *Id.* at 29–30, 38–39 and 68–69. Appellant asked the victim to sit on his lap. *Id.* at 30. When he refused, Appellant placed the child on his lap. *Id.* Appellant then asked the victim's sister if she could play the game by herself. *Id.* at 49. Upon receiving her affirmative response, Appellant got up and entered the bedroom closet. *Id.* at 30 and 49.

Appellant repeatedly asked the victim to accompany him in the closet. *Id.* at 30 and 39. The victim refused. *Id.* at 30. Appellant then grabbed the victim by his arm and pulled him into the closet where he forcibly pulled down the victim's shorts and underpants and proceeded to molest the victim. *Id.* at 30–33, 44–45 and 47.

While Appellant was not specifically asked to oversee or supervise the children, he voluntarily arrogated that role to himself by entering the children's bedroom and involving himself in their games. He then directed and forced the victim to enter the closet and submit to Appellant's unwanted sexual acts. This evidence was sufficient to prove that Appellant oversaw or supervised the victim. To hold the evidence insufficient merely because the victim's mother did not specifically ask Appellant to supervise the children ignores Appellant's status as an adult relative who assumed a position of authority over the victim. Because the evidence was sufficient to sustain Appellant's conviction I would affirm the judgment of sentence.

ORIE MELVIN, Judge, concurring:

While I join this en banc opinion, I write separately to express my belief that despite the procedural due process infirmity of § 9794 of Title 42 the purpose of such a law remains a laudable and achievable goal which should not be discarded nor its implementation abandoned. I would therefore encourage our General Assembly to act expeditiously in making revisions that will comport with the constitutional mandates expressed in the majority opinion.

While not addressed by the majority, it is noteworthy to mention that similar legislation has withstood constitutional scrutiny by

the United States Supreme Court on substantive due process, double jeopardy and ex post facto grounds. *See Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). Unlike our law, the Kansas Sexually Violent Predator Act[1] places the burden of proof upon the State and was therefore not assailable on procedural due process grounds. Moreover, the Kansas Act provides an alternative method for dealing with violent sexual predators. Rather than increasing an offender's maximum term of imprisonment or imposing a mandatory life sentence the Kansas law establishes a procedure for the civil commitment of such persons. As outlined by the United States Supreme Court in *Kansas v. Hendricks, supra,*

> the Act's civil commitment procedures pertain[s] to: (1) a presently confined person who 'has been convicted of a sexually violent offense' and is scheduled for release; (2) a person who has been 'charged with a sexually violent offense' but has been found incompetent to stand trial; (3) a person who has been found 'not guilty by reason of insanity of a sexually violent offense'; and (4) a person found 'not guilty' of a sexually violent offense because of a mental disease or defect.

*Id.* 117 S.Ct. at 2077.

When a petition seeking civil commitment is filed under the Kansas Act, the court must first determine whether "probable cause" exists to support a finding that the person is a "sexually violent predator" and thus eligible for civil commitment. If such a determination is made then the individual is transferred to a facility for professional evaluation. § 59–29a05. Following the evaluation, a trial would be held to determine whether the individual was a sexually violent predator with the proof being beyond a reasonable doubt. If found to be a predator, the person is transferred to the custody of the Secretary of Social and Rehabilitation Services for "control, care and treatment until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large." § 59–29a07(a). Therefore I believe, in addition to the crimi-

nal sanctions provided by the instant legislation, our Commonwealth would be well-served by a closer examination into the viability of a civil commitment alternative.

---

1. Kan. Stat. Ann. 59–29a01 to 59–29a15 (1994 & Supp.1996).