**Roy D. VAN DOREN, Jr., Petitioner,**

v.

**Joseph F. MAZURKIEWICZ, Ph.D; Title 42 Pa.C.S. Sections 9791 et seq.; Title 37 Pa.C.S. Sections 56.1 et seq.; and, all other matters relating to "Megan's Law" and Attorney General of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 10, 1997.

Decided June 12, 1997.

Roy D. Van Doren, Jr., petitioner, for himself.

Michael L. Harvey, Senior Deputy Attorney General, Harrisburg, for respondent, Attorney General of PA.

Before DOYLE and PELLEGRINI, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

This case involves preliminary objections filed by the Attorney General of Pennsylvania and Joseph F. Mazurkiewicz (collectively, Respondents), the Superintendent of the State Correctional Institution–Rockview (SCI–Rockview), in response to the Petition for Review filed by Roy A. Van Doren, Jr., an inmate at SCI–Rockview, which challenges the constitutionality of the registration provisions for sex offenders set forth in 42 Pa.C.S. §§ 9791–9799.6, commonly known as "Megan's Law."[1]

This action was apparently precipitated by a memorandum circulated by Superintendent Mazurkiewicz, which was attached as an exhibit to Van Doren's original Petition for Review, although not attached as an exhibit to his Amended Petition for Review. Apparently, the memorandum circulated by Respondent Mazurkiewicz informed inmates that, in accord with the provisions of Megan's Law,

> [A]ny inmate who will be released from this institution and has completed his en-

---

1. This statute was originally enacted by the Act of October 24, 1995, P.L. 1079 (Spec.Sess. No. 1), effective immediately, and was subsequently amended by the Act of May 22, 1996, P.L. 300.

tire sentence will be notified at least ten (10) days prior to his max date ... that he is required to register under this new law. **Any inmate who fails to sign these two (2) registration forms will be committing a felony of the third degree and subsequently will be arrested by the Pennsylvania State Police in violation of this law.**

(Exhibit A to Petition for Review at 1.) (Emphasis added.)

According to the averments in Van Doren's Amended Petition for Review, he is currently serving a mandatory ten-year prison sentence at SCI–Rockview, which is scheduled to expire on March 23, 1998, for convictions in Wayne County for the crimes of statutory rape (18 Pa.C.S. § 3122), involuntary deviate sexual intercourse with someone under 16 years of age (18 Pa.C.S. § 3123(a)(7), formerly 3123(5)), indecent assault (18 Pa.C.S. § 3126), and incest (18 Pa.C.S. § 4302).

On June 3, 1996, Van Doren instituted the present action by filing a Petition for Review, requesting injunctive and declaratory relief and challenging the constitutionality of the registration provisions of Megan's Law. On August 27, 1996, Van Doren filed an Amended Petition for Review, to which the Attorney General and Respondent Mazurkiewicz filed preliminary objections on October 28, 1996, and November 22, 1996, respectively.

Megan's Law essentially provides that those convicted of certain specified crimes must "register" in accordance with the provisions of the legislation. The crimes requiring registration are enumerated in Section 9793(b) of Megan's Law, which provides:

(b) **Persons required to register.—**

(1) Persons convicted of any of the following offenses that are classified as a felony and involve a victim who is a minor:

18 Pa.C.S. § 2901 (relating to kidnapping) except by a parent.

18 Pa.C.S. § 3121 (relating to rape).

18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse).

18 Pa.C.S. § 3125 (relating to aggravated indecent assault).

18 Pa.C.S. § 5902(b) (relating to prostitution and related offenses).

18 Pa.C.S. § 5903(a)(3), (4), (5) or (6) (relating to obscene and other sexual materials and performances).

(2) Persons convicted of any of the following offenses regardless of the age of the victim:

18 Pa.C.S. § 3121 [ (relating to rape) ].

18 Pa.C.S. § 3123 [ (relating to involuntary deviate sexual intercourse) ].

18 Pa.C.S. § 3125 [ (relating to aggravated indecent assault) ].

18 Pa.C.S. § 3128(a) and (b) (relating to spousal sexual assault).

42 Pa.C.S. § 9793(b)(1)–(2). Offenders required to register under Megan's Law must do so in accordance with Section 9793(a), which pertinently provides:

(a) **Registration.—**A person convicted of any of the offenses set forth in subsection (b) shall be required to register a current address with the Pennsylvania State Police upon release from incarceration.... The Department of Corrections shall not release the offender until it receives verification from the Pennsylvania State Police that it has received the registration information. Where the offender is scheduled to be released from a state correctional facility due to the expiration of the maximum term of incarceration, the Department of Corrections shall collect the information from the offender no later than ten days prior to the maximum expiration date. The Department of Corrections shall forward the registration information to the Pennsylvania State Police. Where the offender scheduled to be released due to the maximum expiration date refuses to provide the registration information, the Department of Corrections shall notify the Pennsylvania State Police of the failure to provide registration information and of the expected date, time and location of the release of the offender.... The offender shall inform the Pennsylvania State Police within ten days if the offender changes residence.... The period of registration shall be ten years.

42 Pa.C.S. § 9793(a). The registration information is then provided to the chief law

enforcement officer of the municipality in which the sex offender will reside.[2]

Megan's Law also classifies certain sex offenders as "sexually violent predators,"[3] who must register in accordance with 42 Pa.C.S. § 9795.[4] The critical difference between the two designations is that, in the case of sexual offenders, the registration information is disseminated only to local law enforcement officials, whereas in the case of "sexually violent predators," the registration information is disseminated on a much broader scale pursuant to Section 9798(b):

> **(b) To whom written notice is provided.**—The chief law enforcement officer shall provide written notice, under subsection [9798](a), to the following persons:
>
> (1) Neighbors of the sexually violent predator.
>
> (2) The director of the county children and youth service agency of the county where the sexually violent predator resides.
>
> (3) The superintendent of each school district and the equivalent official for private and parochial schools enrolling students up through grade 12 in the municipality.

> (4) The director of each licensed day care center and licensed preschool program in the municipality.
>
> (5) The president of each college, university and community college located within 1,000 feet of a sexually violent predator's address.

42 Pa.C.S. § 9798(b).

There is, therefore, a discernable difference between the mere registration of a "sexual offender" and the registration and broader notification provisions applicable to a "sexually violent predator."

We should first note that, although in his petition for review Van Doren invokes this Court's original jurisdiction pursuant to Section 761 of the Judicial Code, 42 Pa.C.S. § 761, Van Doren ostensibly "appealed" from a "decision" of the Superintendent, which in fact was simply a memorandum circulated to the inmates.[5] To the extent that Van Doren implies that the Superintendent's action in this regard was tantamount to a final appealable order or decision, Van Doren is, of course, incorrect.[6] However, we will consider Van Doren's Petition for Review as a request for declaratory judgment inasmuch

---

2. Section 9793(c) of Megan's Law provides:

The Pennsylvania State Police shall provide the information obtained under this section and sections 9795 (relating to registration of offenders) and 9796 (relating to verification of residence) to the chief law enforcement officer of the police department of the municipality in which the offender will reside. In addition, the Pennsylvania State Police shall provide this officer with the address at which the offender will reside following his release from incarceration, parole or probation.

42 Pa.C.S. § 9793(c).

3. A "sexually violent predator" is defined under Megan's Law as:

A person who has been convicted of a sexually violent offense as set forth in section 9793(b) (relating to registration of certain offenders for ten years) and who is determined to be a sexually violent predator under section 9794(e) (relating to designation of sexually violent predators) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

42 Pa.C.S. § 9792.

4. This section of Megan's law provides for essentially the same registration procedures as those set forth in 42 Pa.C.S. § 9793(a).

5. Van Doren included a caption in his Amended Petition for Review styled as "Reference to Determination Sought to Be Reviewed," and thereafter refers to the memorandum circulated by Respondent Mazurkiewicz. (Amended Petition for Review at 2.)

6. In his amended petition for review, Van Doren requests the following relief:

Petitioner Roy D. Van Doren, Jr. respectfully requests that this Court rule on Respondent Mazurkiewicz's dictum ... and its application of validity; and, that this Court rule on the application of whether a prisoner sentenced before the enactment of 42 Pa.C.S. §§ 9791 et seq., 37 Pa.C.S. §§ 56.1 et seq. and all other matters relating to 'Megans [sic] Law' regarding registration is a violation under Article 1 section 10 of the U.S. Const., that no state shall pass an ex post facto law regarding any individual sentenced before the enactment of ... 'Megans [sic] Law,' since it changes the punishment and inflicts a credibl[y] greater punishment than was attached to [an] act already committed.

(Amended Petition for Review at 5.)

as he challenges the constitutional validity of the registration provisions of Megan's law, to which he will inevitably be subject prior to expiration of his prison term on March 23, 1998.

Specifically, in his Amended Petition for Review, Van Doren asserts that requiring him to comply with the registration provisions of Megan's Law constitutes additional punishment and therefore violates the Double Jeopardy and Ex Post Facto Clauses of the United States Constitution. It is argued in the Respondents' preliminary objections and brief that Van Doren's action should be dismissed because (1) Van Doren lacks standing because his constitutional challenge to the registration provisions of Megan's Law is not ripe; and (2) Van Doren's petition for review fails to state a claim upon which relief may be granted.

This case appears to be one of first impression in this Commonwealth.

## I. STANDING

■ The Attorney General and Respondent Mazurkiewicz argue that Van Doren lacks standing to bring the present action because he has not asserted a justiciable or ripe claim in light of the fact that "Van Doren has no obligation to provide any registration information until ten days before the expiration of his term, [*i.e.*], on March 23, 1998." (Brief of Attorney General at 9.)

■ The ripeness doctrine is a concept of standing premised on the notion that "[j]udicial machinery should be conserved for problems which are real and present or imminent, not squandered on problems which are abstract or hypothetical or remote." *Western Pennsylvania Water Co. v. Pennsylvania Public Utility Commission*, 471 Pa. 347, 361, 370 A.2d 337, 344 (1977) (Roberts, J., dissenting).

■ Thus, in order to have standing, a party seeking declaratory relief must establish an interest which "must be a direct, substantial and present interest, as contrasted with a remote or speculative interest." *Kauffman v. Osser*, 441 Pa. 150, 155, 271 A.2d 236, 239 (1970); *see also South Whitehall Township v. Department of Transporta-*

*tion*, 82 Pa.Cmwlth. 217, 475 A.2d 166 (1984). As our Supreme Court stated in *Gulnac v. South Butler County School District*, 526 Pa. 483, 488, 587 A.2d 699, 701 (1991), "declaratory judgment must not be employed to determine rights in anticipation of events which may never occur ... or as a medium for the rendition of an advisory opinion which may prove to be purely academic."

However, the United States Supreme Court stated in *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979), that "when the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of relief." *See also Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974) ("It is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute he claims deters the exercise of his constitutional rights.").

With these principles in mind, we believe that, in this case, the petitioner **has** asserted a direct, substantial, and present interest which is neither remote nor speculative. The express terms of Megan's Law indicate that, by refusing to provide the required registration information, Van Doren will be committing a felony of the third degree. 42 Pa.C.S. § 9793(e). Moreover, the amended version of Section 9793(a) requires the Department of Corrections to notify the Pennsylvania State Police of the expected date, time, and location of the release of an offender who will be released due to the expiration of his maximum term of incarceration and has failed to provide the required registration information. The obvious purpose of this procedure is to prepare the Pennsylvania State Police to arrest the offender at the gates of the correctional facility. This conclusion is substantiated by the fact that Respondent Mazurkiewicz, the Superintendent of SCI–Rockview, circulated a memorandum to this effect, as well as by the fact that failure to provide the registration information has been

classified by our General Assembly as a felony of the third degree. Consequently, we believe that the threat of prosecution Van Doren faces under the statute is both *direct* and *substantial;* it is certainly not hypothetical or remote.

Although Van Doren will not be required to register in accordance with 42 Pa.C.S. § 9793 until March 13, 1998, this date is, at the time of this opinion, less than 10 months away and is not so remote to justify dismissing his claim on the basis that it is unripe. This conclusion is underscored by the fact that there is absolutely no uncertainty about whether he will be subject to the challenged registration provisions at that time. Additionally, because it is clear that Van Doren need not await actual criminal prosecution in order to challenge the constitutionality of the statute, it would make little sense for us to determine now that some arbitrary moment in the future, occurring sometime during the next 10 months but prior to the expiration of his maximum term on March 23, 1998, is the point at which Van Doren's present claim suddenly becomes "ripe" for judicial consideration.

We also find it persuasive that the United States Court of Appeals for the Third Circuit reached virtually the same conclusion with respect to this standing issue in *Artway v. Attorney General of New Jersey,* 81 F.3d 1235 (1996), in which the Court determined that a sex offender *could* bring a preenforcement challenge to New Jersey's version of Megan's Law.

Therefore, because Van Doren will inevitably be subject to prosecution pursuant to the provisions of Megan's law which he challenges, and because he alleges a direct, substantial and immediate injury, we hold that the present action *is* presently ripe for our consideration and thus reject the Respondents' contention to the contrary.[7]

## II. FAILURE TO STATE A VIABLE CLAIM

As noted above, the substance of Van Doren's claim is that requiring him to comply with the registration provisions of Megan's Law constitutes additional punishment and that the statute, therefore, violates the Double Jeopardy and Ex Post Facto Clauses of the United States Constitution. A predicate to succeeding on either of these claims, however, is the crucial determination that the registration provisions constitute "punishment" as regarded by the law in accordance with established constitutional principles. Because Van Doren premises his entire argument against the validity of Megan's Law on provisions of the United States Constitution, we find the federal decision of the Third Circuit in *Artway,* in which the same challenges were made to New Jersey's version of Megan's Law, to be exceptionally persuasive in this regard.

Article I, Section 10 of the United States Constitution provides that "no state shall ... pass any ... ex post facto law." This language has been interpreted by the United States Supreme Court to mean that the government may not apply a law retroactively by inflicting a greater *punishment* than that statutorily prescribed at the time the crime was committed. *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d

---

7. Respondents also argue that Van Doren lacks standing to challenge 42 Pa.C.S. § 9795, which relates to the registration of "sexually violent predators," because he is not in fact subject to those provisions of Megan's Law. Contrary to what Van Doren argues in his brief, this factual assertion by Respondents is correct because, although the remainder of the provisions of Megan's Law apply to all sex offenders who are "under the jurisdiction of the Pennsylvania Board of Probation and Parole or the Department of Corrections before the effective date of Megan's Law," the provisions which relate to those classified as "sexually violent predators" apply only to those who were *convicted* of an offense committed on or after the effective date

of the legislation. Act of October 24, 1995, P.L. (Spec.Sess. No. 1) 1079, No. 24, § 3, *amended by,* Act of May 22, 1996 P.L. 300, effective immediately.

Because Van Doren was convicted sometime in 1988 (although the exact date does not appear in any of the parties' briefs), it was, therefore, prior to October 24, 1995, the effective date of Megan's Law, and the provisions relating to offenders classified as "sexually violent predators" do not apply to him. We nevertheless believe that, because Van Doren will be subject to the remaining registration provisions of Megan's Law, *i.e.,* the registration provisions of 42 Pa.C.S. § 9793(a)–(c), he does having standing to bring a justiciable claim.

17 (1981); *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798). The Double Jeopardy Clause, on the other hand, provides: "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In essence, the Double Jeopardy Clause prohibits "a second prosecution for the same offense ... and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989).[8]

■ As noted above, a predicate to asserting a viable constitutional challenge pursuant to either the Ex Post Facto Clause or the Double Jeopardy Clause is that the challenged statute impose "punishment" as defined by established constitutional principles. Therefore, as the Third Circuit observed in *Artway,*

> The threshold question under each clause ... is whether the registration provisions of Megan's Law impose 'punishment.' If registration does not impose punishment, our inquiry with respect to the registration issue is at an end.

*Artway,* 81 F.3d at 1253. This inquiry entails the application of a multi-part test developed by the federal courts for making such a determination.

■ The relevant test has both subjective and objective components and, in essence, "looks to the legislature's subjective purpose in enacting the challenged measure, its 'objective' purpose in terms of proportionality and history, and the measure's effects." *Id.* at 1254. In synthesizing the legal principles articulated by the Supreme Court in *De Veau v. Braisted,*[9] *United States v. Halper,*[10] *Austin v. United States,*[11] *Department of Revenue v. Kurth Ranch,*[12] and *California Department of Corrections v. Morales,*[13] the

Third Circuit derived a three-prong analytical framework for determining whether the registration provisions of Megan's Law constituted "punishment." Specifically, this test is as follows:

> A measure must pass a three-prong analysis—(1) actual purpose, (2) objective purpose, and (3) effect—to constitute non-punishment. We must look at the actual purpose to see 'whether the legislative aim was to punish.' ... If the legislature intended Megan's Law to be 'punishment,' *i.e.* retribution was one of its actual purposes, then it must fail constitutional scrutiny. If, on the other hand, 'the restriction of the individual comes about as a relevant incident to a regulation,' the measure will pass this first prong....
>
> If the legislature's actual purpose does not appear to be to punish, we look next to its 'objective' purpose. This prong has three subparts. First, can the law be explained solely by a remedial purpose? ... If not, it is 'punishment.' Second, even if some remedial purpose can fully explain the measure, does a historical analysis show that the measure has traditionally been regarded as punishment? ... If so, and if the text or legislative history does not demonstrate that this measure is not punitive, it must be considered "punishment." Third, if the legislature did not intend a law to be retributive but did intend it to serve some mixture of deterrent and salutary purposes, we must determine (1) whether historically the deterrent purpose of such a law is a necessary complement to its salutary operation and (2) whether the measure under consideration operates in its "usual" manner, consistent with its historically mixed purposes.... Unless the partially deterrent measure

---

8. For a more detailed description of the Double Jeopardy Clause, its history, and the protection afforded thereby, see *Blockburger v. U.S.*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), and Ryan J. Cassidy, Note, *United States v. Dixon: The "Jeopardizing" of Judicial Contempt Power*, 5 Widener J.Pub.L. 179 (1995).

9. 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960).

10. 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).

11. 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).

12. 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

13. 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).

meets both of these criteria, it is "punishment." If the measure meets both of these criteria and the deterrent purpose does not overwhelm the salutary purpose, it is permissible under *Kurth Ranch.*

Finally, if the purpose tests are satisfied, we must then turn to the effects of the measure. If the negative repercussions—regardless of how they are justified—are great enough, the measure must be considered punishment. . . .

*Artway,* 81 F.3d at 1263 (citations omitted).

### 1. Actual Purpose

In applying these principles, the Third Circuit first looked to the actual purpose of New Jersey's version of Megan's Law, and by looking at the section of the statute setting forth the legislative statement of purpose, which is very similar to the comparable provision in Pennsylvania's version of Megan's Law, the Court determined that the legislature's intent was not to punish but to "identify and alert the public," to "enhance safety" and to "prevent and promptly resolve incidents." *Id.* at 1264. The Court therefore concluded that the subjective or "actual" purpose of the legislation was nonpunitive and remedial in nature.

### 2. Objective Purpose

Second, the Court analyzed the objective purpose of Megan's law by conducting the applicable three-subpart analysis of this objective prong of the test. The Court first reasoned that "[r]egistration is a common and long-standing regulatory technique with a remedial purpose." *Id.* at 1264–65 (citing *New York ex rel. Bryant v. Zimmerman,* 278 U.S. 63, 49 S.Ct. 61, 73 L.Ed. 184 (1928) (registration of membership corporations and associations permissible); *United States v. Kahriger,* 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953) (registration of professional gamblers permissible), *overruled on other grounds by Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954) (registration of lobbyists permissible)).

The Court further opined that:

[T]he solely remedial purpose of helping law enforcement agencies keep tabs on these offenders fully explains requiring certain sex offenders to register. Registration may allow officers to prevent future crimes by intervening in dangerous situations. . . . [T]he registrant may face some unpleasantness from having to register and update his registration. But the remedial purpose of knowing the whereabouts of sex offenders fully explains the registration provision just as the need for dinner fully explains the trip out into the night. And the means chosen—registration and law enforcement notification **only**—is not excessive in any way. Registration, therefore, is certainly "reasonably related" to a legitimate goal: allowing law enforcement to stay vigilant against possible re-abuse.

*Id.* at 1265 (emphasis added). Finally, under the objective prong of this analysis, the Court concluded that "registration does not resemble punishment through a historical analysis," and "because registration historically is a regulatory technique with a salutary purpose, any incidental purpose to deter future offenses by past sex offenders will not invalidate it under [the Supreme Court's holding in] *Kurth Ranch." Id.* at 1265–66.

### 3. Effect

Last, the Third Circuit examined whether the effects of Megan's law is "so harsh 'as a matter of degree' that it constitutes 'punishment.'" Although noting the ostracism which may potentially be concomitant with the *notification* provisions of the statute, the Court observed that

[T]he [registration] information is already available in the public record. It is disclosed to law enforcement, which has ready access to this criminal history. . . . Therefore, [the] impact [of the registration provisions], even coupled with a registrants inevitable kowtow to law enforcement officials, cannot be said to have an effect so draconian that it constitutes 'punishment' in any way approaching incarceration.

*Id.* at 1267.

Consequently, because the registration provisions of New Jersey's version of Me-

gan's Law did not impose "punishment," the Court found that the statute could not violate the Ex Post Facto Clause or the Double Jeopardy Clause of the United States Constitution.[14]

### III. Pennsylvania's Version of Megan's Law

■ The analysis set forth by the Third Circuit in *Artway* compels this Court to a similar conclusion with respect to Pennsylvania's version of Megan's Law. The actual, or subjective, legislative purpose of Megan's Law is clearly expressed in the provisions of the statute itself:

(a) **Legislative Findings.**—It is hereby determined and declared as a matter of legislative finding:

(1) If the public is provided adequate notice and information about sexually violent predators and certain other offenders, the community can develop constructive plans to prepare themselves and their children for the offender's release. This allows communities to meet with law enforcement to prepare and obtain information about the rights and responsibilities of the community and to provide education and counseling to their children.

(2) These sexually violent predators pose a high risk of engaging in further offenses even after being released from incarceration or commitments and that protection of the public from this type of offender is a paramount governmental interest.

(3) The penal and mental health components of our justice system are largely hidden from public view and lack of information from either may result in failure of both systems to meet this paramount concern of public safety.

(4) Overly restrictive confidentiality and liability laws governing the release of information about sexually violent

predators have reduced the willingness to release information that could be appropriately released under the public disclosure laws and have increased risks to public safety.

(5) Persons found to have committed such an offense have a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government.

(6) Release of information about sexually violent predators to public agencies and the general public will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems so long as the information released is rationally related to the furtherance of those goals.

(b) **Declaration of policy.**—It is hereby declared to be the intention of the General Assembly to protect the safety and general welfare of the people of this Commonwealth by providing for registration and community notification regarding sexually violent predators who are about to be released from custody and will live in or near their neighborhood. It is further declared to be the policy of this Commonwealth to require the exchange of relevant information about sexually violent predators among public agencies and officials and to authorize the release of necessary and relevant information about sexually violent predators to members of the general public **as a means of assuring public protection and shall not be construed as punitive.**

42 Pa.C.S. § 9791 (emphasis added). Thus, it is clear that the subjective legislative purpose of the statute was not to punish but to effectuate the nonpunitive purpose of protecting the public.

Furthermore, the Third Circuit's analysis with respect to the objective prong of the three-part test is sound, and, for the sake of

---

**14.** In *Artway,* as well as in subsequent cases, the constitutionality of the **notification** provisions of legislation similar to Pennsylvania's version of Megan's Law has been called into serious question. *See Doe v. Pataki,* 940 F.Supp. 603 (S.D.N.Y.1996). In the case before us now, however, Van Doren has challenged only the **regis-**tration provisions of the statute, and thus the question of whether the notification provisions of Megan's Law are constitutional is not before us. Moreover, it is doubtful that Van Doren would presently have standing to bring such a challenge to the notification provisions, because he has not been classified as a "sexually violent predator."

avoiding redundancy, we need not undertake a repetitive analysis here. Suffice it to say, however, that we agree with the analysis and conclusion of the Third Circuit set forth above, and hold that the **registration** provisions of Megan's Law do not constitute punishment because the registration provisions may be explained solely by a nonpunitive remedial purpose, because a historical analysis of the act of "registration" demonstrates that the measure has not traditionally been regarded as punishment, and because any detrimental effects of the registration provisions of Megan's Law are incidental to their salutary purpose and operation.

Finally, we also agree that the effects of the registration provisions of Megan's Law are both regulatory and remedial in nature and do not, by themselves, so adversely affect a sex offender to be regarded as "punishment" pursuant to federal case law. *See Artway,* and the cases cited therein.

Because the registration provisions of Megan's Law do not constitute "punishment" under the United States Constitution, and therefore do not offend the Double Jeopardy or Ex Post Facto Clauses, we must sustain Respondents' preliminary objections on the basis that Van Doren fails to state a claim upon which relief may be granted.

■ Although not stated in his Amended Petition for Review,[15] Van Doren, in his brief, contests the fact that he must report his intended "residence" after his release because he purportedly intends to enter some sort of veterans facility "for service connected disabilities," and further contends that "a VA facility is not a residence but a treating facility." Although this facet of the case implicates an interesting issue, *i.e.,* whether a treatment facility or other institution is a "residence" under Megan's Law, it would be inappropriate for us to address this issue in any detail in light of Van Doren's failure to raise the issue in his Amended Petition for Review. *See Borda Construction v. Workmen's Compensation Appeal Board,* 689 A.2d 1005 (Pa.Cmwlth.1997) ("When a petitioner fails to raise an issue in the petition for review, it is considered waived and will not be addressed by the Court."). Perhaps the future will bring an appropriate occasion for us to consider this issue in more depth.

Accordingly, Respondents' preliminary objections to the Amended Petition for Review are sustained, and the Amended Petition for Review filed by Van Doren is dismissed for failing to state a claim upon which relief may be granted.[16]

### ORDER

NOW, June 12, 1997, the preliminary objections to the Amended Petition for Review in the above-captioned matter are sustained, and the Amended Petition for Review is hereby dismissed.

---

15. In his petition, Van Doren merely states that "he does not know where he is going." (Amended Petition for Review at 3.) We note that, when Van Doren is required to register ten days prior to his release, he will most certainly have some idea of where he plans to go once he exits the front gates of the prison. Should it turn out that he eventually resides elsewhere, he need only notify the Pennsylvania State Police within ten days in accordance with Section 9793(a) of Megan's Law, 42 Pa.C.S. § 9793(a).

16. Respondents also argue that Van Doren's petition should be dismissed because they are not the proper parties to the action. However, in light of the fact that we have determined that Van Doren's petition should be dismissed in its entirety for failing to state a claim upon which relief may be granted, we need not address the substance of these procedural arguments.