# Commonwealth v. Bannigan

C.P. of Bucks County, no. 5733/2000.

*Gayle M. Baker,* for Commonwealth.
*Vanessa L. Bellino,* for defendant.

*EN BANC,* BIEHN, *J.,* J.J. RUFE, *J.* AND BIESTER JR., *S.J.,* September 18, 2001—Defendant James Bannigan has challenged the constitutionality of Pennsylvania's Megan's Law. This is an issue of first impression in Bucks County.

## PROCEDURAL HISTORY

On January 11, 2001, defendant James Bannigan entered a plea of guilty to the charge of aggravated indecent assault, 18 Pa.C.S. §3125, and other related offenses in connection with a sexual assault on his mentally handicapped niece. Aggravated indecent assault is an enumerated offense under Pennsylvania's Megan's Law. 42 Pa.C.S. §9791 et seq. Following defendant's conviction,

the State Sexual Offenders Assessment Board was ordered to determine whether defendant should be classified as a sexually violent predator.

Upon completion of the assessment, the Commonwealth filed a praecipe for a sexually violent predator hearing pursuant to 42 Pa.C.S. §9795.4. By order dated May 2, 2001 a sexually violent predator hearing was scheduled for May 4, 2001. Prior to the hearing, defendant filed a motion for extraordinary relief to challenge the constitutionality of the sexually violent predator provisions of Pennsylvania's Megan's Law, to suppress evidence, to bar ex post facto prosecution and to bar a second prosecution for the same offense. The American Civil Liberties Union together with the Pennsylvania Association of Criminal Defense Lawyers, Defender Association of Philadelphia and the Public Defender Association of Pennsylvania filed an amicus curiae memorandum of law in support of defendant's constitutional challenges. The Commonwealth submitted a responsive memorandum.

On July 12, 2001 the Honorable R. Barry McAndrews, President Judge, appointed the undersigned three-judge panel to hear argument on defendant's motions. On July 25, 2001, argument was conducted in open court. The matter is now ripe for disposition.

A. *Pennsylvania's Megan's Law*

1. Background

The original version of Pennsylvania's Megan's Law (Megan's Law I) was signed into law by the legislature

in 1995. The statute had two main components: (1) registration provisions applicable to all offenders convicted of any of the enumerated predicate offenses and (2) sexually violent predator/notification provisions. In *Commonwealth v. Williams,* 557 Pa. 285, 733 A.2d 593 (1999), the Pennsylvania Supreme Court struck down the notification/sexually violent predator portions of the original version of the Act as "violative of the procedural due process guarantees of the Fourteenth Amendment." Specifically, the court found those portions of the Act, which placed a burden on a defendant to rebut the presumption that the defendant was a sexually violent predator, were contrary to fundamental constitutional principles. After careful analysis, the court concluded that the Commonwealth must bear the burden of demonstrating that an offender is a sexually violent predator. *Id.*

On May 10, 2000, the Pennsylvania State Legislature enacted an amended version of Megan's Law (Megan's Law II), which became effective on July 9, 2000. Megan's Law II complies with the requirements of *Williams,* insofar as the burden of persuasion for determining whether an offender is a sexually violent predator now rests with the Commonwealth. Megan's Law II also retained the registration provisions applicable to all offenders and the sexually violent predator/ notification provisions of Megan's Law I. The legislature, however, made some changes to the registration provisions as well as to other portions of the Act.

## 2. Persons Covered by the Act

All convicted sex "offenders" as defined under Megan's Law II are subject to its requirements. Offender

is defined in the Act as an individual required to register under section 9795.1(a), (b)(1), or (2). Sexually violent predator is defined as a person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. The term includes an individual determined to be a sexually violent predator where the determination occurred in other state, territory, federal court, the District of Columbia or by court martial.

### 3. Registration

Megan's Law II requires all offenders to register their residence with the Pennsylvania State Police upon discharge, release or parole. The duration and frequency of the registration obligation depends upon whether the sex offender is classified as an offender pursuant to section 9795.1(a) or section 9795.1(b). An offender who has been convicted of kidnapping, indecent assault, incest, promoting prostitution of a minor, sexual abuse of children, unlawful contact with children, sexual exploitation of children, and crimes relating to obscene and other sexual materials and performances of minors falls under the provisions of 9795.1(a) and must register with the Pennsylvania State Police for a period of 10 years. An offender who has been convicted of rape, involuntary deviate sexual intercourse, sexual assault, aggravated indecent assault, or incest relating to a vic-

tim under the age of 12, or is a repeat offender or sexually violent predator falls under the provisions of 9795.1(b) and must register with the Pennsylvania State Police for life.

All offenders are required to notify the Pennsylvania State Police within 10 days of a change of residence. In addition, offenders not classified as sexually violent predators must verify their residence in person at a Pennsylvania State Police station annually. To register, offenders must complete a verification form and be photographed.

All offenders required to register must do so or risk a criminal penalty. An offender who fails to verify his or her residence is guilty of a felony of the third degree. Lifetime registrants who fail to verify their residence may be subject to a mandatory minimum of lifetime probation or a maximum of lifetime incarceration.

4. Sexually Violent Predator Assessment/Notification

After a person is convicted of one of the enumerated offenses, a trial court must defer sentencing and order the Sex Offender's Assessment Board to assess the defendant. Upon receipt of the court order, the board must conduct an assessment of the offender to determine if the individual should be classified as a sexually violent predator. After completion of the assessment, the board must submit to the district attorney a written report containing its assessment. Following receipt of the assessment, the district attorney may file a praecipe for a hearing to adjudicate whether the offender is a sexually violent predator.

At the hearing, the Commonwealth bears the burden of proving that the offender should be classified as a sexually violent predator by clear and convincing evidence. The offender has the right to counsel, the right to call expert witnesses and the right to cross-examine the Commonwealth's witnesses. At the conclusion of the hearing, the court must make a determination as to the status of the offender.

If the court adjudicates an offender a sexually violent predator, the offender must comply with the sexually violent predator/notification provisions found in Megan's Law II. Prior to release from prison, parole or probation, and for the remainder of his or her life, the sexually violent predator must register his or her residence with the Pennsylvania State Police. An offender must notify the police of any change of residence within 10 days of the change. Every 90 days, the sexually violent predator will receive a non-forwardable verification of address form. Sexually violent predators must then appear in person to verify their registration at a Pennsylvania State Police office and be photographed. Any violation of either the registration or verification provisions constitutes a felony of the first degree with a mandatory minimum sentence of probation for the remainder of the individual's lifetime, and the possibility of a sentence of lifetime incarceration.

A person who is adjudicated a sexually violent predator is required to attend monthly counseling sessions for life in a program approved by the assessment board and be financially responsible for all fees assessed from such counseling session unless he or she can demonstrate indigence. In addition, every 90 days the sexually

violent predator must verify his or her compliance with the mandatory counseling provisions with the state police.

Based upon the residence information provided by the sexually violent predator, the chief law enforcement officer of the municipality where the sexually violent predator resides is responsible for providing written notification to designated recipients. Written notification consists of the name of the offender, the address where he or she resides, the offense for which he or she was originally convicted, a statement that a court of law has determined the individual to be a sexually violent predator and a photograph of the individual. This written notification must be given to the victim of the crime, neighbors of the sexually violent predator, the director of the county Children and Youth Services Agency, the superintendent of each school district within the municipality of residence enrolling students through grade 12, the superintendent of any school within a one-mile radius of the sexually violent predator's residence, the licensee of each certified day-care center and preschool program in the municipality of residence and each owner/operator of any registered in-house family day-care center, and the president of any college or university within 1,000 feet of the sexually violent predator's residence. The statute calls for the dissemination of this information within specific timeframes, not exceeding seven days after receipt of the information by the chief law enforcement officer. Any of the information contained in the written notification is available to the public at large upon request, and may be sent through electronic means.

Significantly, in amending Megan's Law I, the legislature removed the portions of the Act that permitted a sexually violent predator to petition the court for reconsideration of his assessment. Consequently, an offender classified as a sexually violent predator is so designated for the remainder of his or her life, regardless of circumstances.

## DISCUSSION

Defendant raises numerous constitutional challenges to the registration and the sexually violent predator provisions of Megan's Law II. At the outset we note that there is a strong presumption that legislative enactments do not violate the constitution. *Williams, supra.* A statute will only be found unconstitutional if it "clearly, palpably and plainly violates the Constitution." *Commonwealth v. Mikulan,* 504 Pa. 244, 247, 470 A.2d 1339, 1340 (1983). Defendant's challenges to the registration and the sexually violent predator provisions will be considered separately.

### A. *Sexually Violent Predator/Notification Provisions*

### 1. The Due Process Claim

Defendant asserts that the proceeding by which an offender is determined to be a sexually violent predator imposes punishment and, therefore, defendant is entitled to the full extent of procedural protections afforded by the Pennsylvania Constitution and the Fourteenth Amendment. Defendant maintains that due proc-

ess requires the Commonwealth's burden of proof at a sexually violent predator hearing to be "beyond a reasonable doubt" and that the "clear and convincing evidence" standard set forth in Megan's Law II does not pass constitutional muster.

In response, the Commonwealth claims that Megan's Law II and its effects are remedial and non-punitive. Since the legislature removed those portions of Megan's Law I that specifically imposed an enhanced sentence upon sexually violent predators, the Commonwealth asserts that the statute must be considered remedial rather than punitive. Moreover, the Commonwealth maintains that the due process rights guaranteed to an offender under Megan's Law II satisfy the requirements of both the state Constitution and the Fourteenth Amendment.

In *Williams, supra,* the Pennsylvania Supreme Court held that the proceeding set forth in Megan's Law I by which an offender was determined to be a sexually violent predator was "a separate factual determination, the end result of which is the imposition of criminal punishment." 557 Pa. at 304, 733 A.2d at 603. In so finding, the court stated that during a sexually violent predator hearing an offender was entitled to the full panoply of the relevant protections which due process guarantees. *Id.*

The *Williams* court's conclusion that the proceeding imposed punishment centered upon the enhanced sentencing provisions found at sections 9799.4(a) and 9799.4(c). Pursuant to those sections, the mandatory maximum penalty for conviction of the underlying offense was increased to the offender's lifetime. The court concluded that despite the legislature's stated pur-

pose of public protection, "by increasing the punishment for the listed . . . offenses where the offender is determined to be a sexually violent predator, the goals of the sexually violent predator provisions are equally punitive." 557 Pa. at 301-302, 733 A.2d at 601-602. (footnote omitted) The court's determination that the Act was penal in nature triggered the application of due process.

Megan's Law II does not contain the enhanced sentencing provisions discussed in *Williams*. Consequently, the conclusions drawn by the court in *Williams* are not dispositive of the procedural due process challenge raised by the defendant in the instant matter. Rather, we are required to make an independent decision as to whether the proceeding by which defendant would be classified as a sexually violent predator, as set forth in Megan's Law II, imposes punishment. Only if this court concludes that the Act inflicts criminal punishment can the requirements of due process be invoked.

A review of the sexually violent predator/notification provisions of Megan's Law II compels us to conclude that this section of the Act is indeed penal in nature. Although there is no dispute that the stated intent in enacting Megan's Law is the protection of the public from violent sexual offenders likely to commit such offenses again in the future, the fact that the sexually violent predator designation is imposed for life, regardless of change in circumstance, defeats that remedial objective. Notifying the community about a person who, by change of circumstances, may no longer be a threat to others offers a diminished benefit to the public welfare. Likewise, the state's legitimate interest in protect-

ing its citizens is overridden when one considers the stigma suffered by a "sexually violent predator" no longer experiencing the mental abnormality that existed at the time of his or her designation as a sexually violent predator. Prohibiting those who have been designated sexually violent predators from demonstrating that the designation is no longer warranted is indicative of the legislation's punitive effect.

Additionally, Megan's Law II allows for unlimited public dissemination of the written notification. Any individual can obtain the sexually violent predator's information simply by request to the local law enforcement agency. The request for information can be fulfilled through electronic means. The legislation's failure to narrowly tailor the dissemination of the notification information emphasizes the punitive effects of the Act.

Finally, the lifetime mandatory counseling and registration requirements of Megan's Law II, applicable to sexually violent predators, are more onerous than the requirements imposed upon any other inmate on parole or probation. An offender's compliance is monitored by the Pennsylvania State Police every 90 days for life. Noncompliance can result in incarceration for life. Unlike those inmates on probation or parole whose compliance with the terms of their release is terminated upon completion of sentence, a sexually violent predator must comply with the counseling and registration provisions for life even after serving his or her court-imposed period of incarceration, parole or probationary sentence. Although a sexually violent predator may have successfully completed a course of

therapy or treatment, or has been found by a therapist or psychiatrist to be rehabilitated, the offender must continue counseling, at his or her own expense; for the remainder of his or her life. The legislation's stated remedial purpose is severely diminished when it prohibits any opportunity for re-evaluation of the sexually violent predator's mental status.

We conclude the effects of the sexually violent predator/notification provisions of Megan's Law II are sufficiently onerous to constitute punishment. The Act imposes a life term of intermediate punishment, maintains a coercive threat of life imprisonment and allows for widespread public dissemination of personal information. Megan's Law II impacts a sexual offender's life, liberty and property such that the due process protections afforded by the United States and Pennsylvania Constitutions are required.

## 2. Due Process Analysis

Having concluded that defendant is entitled to due process protection, we must address what procedural protections are required. It is well-settled that not all situations call for the same level of procedural safeguards. "Due process is flexible and calls for such procedural protections as the particular situation demands . . . ." *Morrisey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

Defendant contends that due process requires that, at a sexually violent predator hearing, the Commonwealth's burden of proving an offender to be a sexually violent predator must be "beyond a reasonable doubt." In response, the Commonwealth maintains that the "clear and

convincing evidence" standard imposed in Megan's Law II adequately balances the interests of both parties while protecting against the risk of an erroneous decision.

The United States Supreme Court in the case of *Matthews v. Eldridge,* set forth the factors a court must apply in analyzing a standard of proof claim. Three distinct considerations must be addressed:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements will entail." *Matthews v. Eldridge,* 424 U.S. 319, 334-35, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976) (citing *Goldberg v. Kelly,* 397 U.S. 254, 263-71, 90 S.Ct. 1011, 1018-22, 25 L.Ed.2d 287 (1970)).

The standard of proof necessary to satisfy the requirements of due process must reflect the significance of the private and public interest affected, and represent a societal decree as to how the risk of error should be distributed between the participants. *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). "Adopting a standard of proof is more than an empty semantic exercise. In cases involving individual rights, whether criminal or civil, the standard of proof [at a minimum] reflects the value society places on individual liberty." *Addington v. Texas, supra,* quoting *Tippett v. Maryland,* 436 F.2d 1153, 1166 (CA4 1971). (citations omitted) The question posed here is whether the "clear

and convincing" burden of proof standard fairly allocates the risk of erroneous fact-finding between the litigants. Such is the type of question traditionally left to the judiciary to resolve. *Williams,* 557 Pa. at 307, 733 A.2d at 605; quoting *Commonwealth v. Wright,* 508 Pa. 25, 494 A.2d 354 (1985); citing *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599. Analyzing the sexually violent predator hearing provision of Megan's Law II under the *Eldridge* test, we conclude that due process requires the Commonwealth to prove that an offender is a sexually violent predator "beyond a reasonable doubt."

### a. *Private interest*

The extent of the dissemination of the written notification, the availability of the information, and the duration of the sexually violent predator assessment all demonstrate the weight and gravity of the impingement on an offender's liberty interest resulting from a negative outcome in a sexually violent predator hearing. As stated by the Third Circuit Court in *Verniero,* 119 F.3d 1077 (3d Cir. 1997), and agreed with by the Pennsylvania Supreme Court in *Williams,* "[N]otification puts the registrant's livelihood, domestic tranquility and personal relationships with others all around him in grave jeopardy." *Verniero,* 119 F.3d at 1107; *Williams,* 557 Pa. at 311, 733 A.2d at 607. There is no denying that the knowledge that someone has been adjudicated to be a sexually violent predator will affect the way in which an individual is treated by neighbors and the members of the community of residence. As the *Verniero* court observed, "[t]he primary sting from Megan's Law notifi-

cation comes by way of injury to what is denoted in constitutional parlance as reputational interests. This includes the burdens of isolation, harassment, loss of opportunities and the myriad of more subtle ways in which one is treated differently by virtue of being known as a potentially dangerous sex offender." *Verniero,* 119 F.3d at 1102.

Under Megan's Law II, once a person is designated a sexually violent predator, the individual suffers the consequence of that designation for life, regardless of change in circumstances. A sexually violent predator is required to attend and to pay for at least monthly counseling sessions for life. The registration provisions require a sexually violent predator to report in person to a police barracks every 90 days for life. Even when a sexually violent predator has completed the court imposed period of incarceration, parole or probationary sentence, he or she is subject to conditions that strongly echo the requirements of probation or parole. Moreover, there is the constant threat of lifetime probation for any violation. All of these statutorily imposed conditions are permanent.

As stated previously, Megan's Law II does not limit dissemination to those persons who are most likely to encounter the offender. There are no legislatively imposed controls to reduce the extent of the stigma in the eyes of the general public. The statute imposes no limitation on geographical scope. In fact, the information is available to any person upon request. Under Megan's Law II the information obtained by individuals can be further disseminated by any means including the internet.

Certainly, the Commonwealth has a compelling interest in protecting its citizens by notifying victims and the community that a classified predator is residing in their community. However, given the permanency of the sexually violent predator assessment and the lifelong impact it will have on an offender, we find that the balance of private interests strongly favors a heightened procedural protection.

### b. *Impact of an erroneous determination*

The effects on an offender erroneously found to be a sexually violent predator are considerable. The overestimation of an offender's dangerousness subjects a sexually violent predator to widespread public dissemination of his or her status. Most importantly, there is no way for an offender to remove the lifetime designation as a sexually violent predator. A sexually violent predator will be subject to public embarrassment, ostracism and possibly even physical violence for life. There is no opportunity for an erroneous classification to be corrected.

In the context of a sexually violent predator hearing, numerous factors combine to magnify the risk of an erroneous determination. In most cases, the Commonwealth's ability to assemble its case against an offender will be greater than the offender's ability to mount a defense. See *Santosky, supra.* Most often, primary expert testimony at the hearing will be presented by a member of the assessment board. There is clearly an opportunity for an erroneous conclusion at the hearing and this highlights the need for a heightened level of due process protection. Furthermore, the Commonwealth has no

vested interest in informing neighborhoods about erroneously classified offenders. *Williams, supra.* Misclassifications offer no progress toward the designated goal of protecting citizens from dangerous sexual offenders. The goal of public safety is best served by implementing a procedure that promotes accurate assessments.

### c. *Fiscal and administrative burdens that the substitute procedural requirement would entail*

Procedural due process requires the imposition of a "beyond a reasonable doubt" standard of proof upon the Commonwealth at a sexually violent predator hearing. "Increasing the burden of proof is one way to impress the fact-finder with the importance of the decision and thereby perhaps to reduce the chances that inappropriate determinations will be ordered." *Addington,* 441 U.S. at 427, 99 S.Ct. 1804, 60 L.Ed.2d at 331. Using a standard typically reserved for criminal matters emphasizes to the court and to the community that the penalty imposed upon a sexually violent predator for life is as great as any other penalty imposed by criminal statute.

It is true that in a sexually violent predator hearing, just as in a civil commitment hearing, the court is required to evaluate medical and psychiatric testimony that rarely rises to a level of absolute certainty. However, as the United States Supreme Court noted in *Addington,* "the layers of professional review and observation of the patient's condition and the concern of family and friends generally will provide continuous opportunities for an erroneous commitment to be corrected." *Addington,* 441 U.S. at 428-29, 99 S.Ct. 1804,

60 L.Ed.2d at 332-33. Under Megan's Law II, an offender has a single opportunity to preclude the imposition of a judicially endorsed classification that will materially alter the quality of his or her life. Given the weight of the private interests at stake and the severe effects of even an occasional error, due process requires that the risk of error must be completely borne by the Commonwealth.

Accordingly, we find that section 9795.4's "clear and convincing" standard of proof fails adequately to provide the procedural due process protections recognized by the United States and Pennsylvania Constitutions. The interests of an offender jeopardized by the sexually violent predator classification warrant a "beyond a reasonable doubt" standard of proof. In light of this determination, it is unnecessary to address the remainder of defendant's constitutional challenges regarding the sexually violent predator provisions.

## B. *Registration*

### 1. The Ex Post Facto and Double Jeopardy Claims

With respect to the constitutional challenges regarding the registration provisions of Megan's Law II, defendant asserts that the provisions of mandating lifetime registration increase the punishment for sex offenses after completion of sentence in violation of the ex post facto and double jeopardy clauses of the Pennsylvania and United States Constitutions.[1] The Commonwealth

---

1. Since petitioner was convicted of rape and involuntary deviate sexual intercourse, the 10-year registration requirements are not implicated.

responds that Megan's Law II is not an ex post facto law and does not violate the double jeopardy clause because it is neither punitive in nature or effect. According to the Commonwealth, the registration requirement is designed for the legitimate goals of public safety and law enforcement.

Article I, section 10 of the United States Constitution forbids states from enacting "any ex post facto law." The ex post facto clause in the Pennsylvania Constitution contains a similar prohibition, "[n]o ex post facto law shall be passed." Pa. Const. Art. §17. The ex post facto clause has been interpreted by the United States Supreme Court to prohibit any government from passing laws that inflict a greater punishment than that statutorily prescribed at the time the crime was committed. *Calder v. Bull,* 3 U.S. (3. Dall) 386, 1 L.Ed. 648 (1798). The double jeopardy clause provides that "no person shall be subject for the same offense to be twice put in jeopardy of life or limb." This clause prohibits, inter alia, a second prosecution for the same offense after conviction and multiple punishments for that same offense. *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed. 487 (1989). A prerequisite to succeeding on either a double jeopardy or ex post facto claim is a determination that the challenged law constitutes "punishment" as defined by established constitutional principals. See *Van Doren v. Mazurkiewicz,* 695 A.2d 967, 972 (Pa. Commw. 1997).

## 2. Punishment Analysis

Pennsylvania courts have addressed ex post facto and double jeopardy challenges to the sex offender regis-

tration laws and determined that the central issue is whether the challenged law impermissibly imposes punishment. See *e.g., Van Doren v. Mazurkiewicz,* 695 A.2d 967 (Pa. Commw. 1997). In *Commonwealth v. Gaffney,* the Pennsylvania Supreme Court addressed the constitutionality of the registration provisions of Megan's Law I. *Commonwealth v. Gaffney,* 557 Pa. 327, 733 A.2d 616 (1999). The defendant asserted that the application of the registration provisions to him constituted an ex post facto violation pursuant to both the federal and state constitutions. In dismissing defendant's claim, the court employed a three-part test formulated by the Third Circuit Court in *Artway v. Attorney General,* 81 F.3d 1235 (3d Cir. 1997) and *E.B. Verniero v. Attorney General,* 119 F.3d 1077 (3d Cir. 1997), *cert. denied,* 522 U.S. 1109, 118 S.Ct. 1039, 140 L.Ed. 2d 105 (1998), designed to determine whether a statute imposes punishment. The Pennsylvania Supreme Court concluded that registration is regulatory, not punitive.

The *Gaffney* court based its analysis on three factors: First, the court inquired into "the legislature's stated intent." The court determined that the declared purpose of Megan's Law I, set forth at section 9391(b), was evidence of the legislature's intent to create a registration procedure designed to protect the public. *Gaffney,* 557 Pa. at 333, 733 A.2d at 619. Second, the court considered whether the legislature's objective purpose, in requiring offenders to register with the state police, was punitive. *Gaffney,* 557 Pa. at 333-34, 733 A.2d at 619-20. Observing that a historical analysis suggests that registration is not punitive, the court stated that the registration requirements were reasonably re-

lated to a legitimate, non-punitive goal of protecting the public. *Id.* Third, the court concluded that the overall effects of the registration requirements were not sufficiently harsh to classify the law as punishment. *Gaffney,* 557 Pa. at 336, 733 A.2d at 621.

A similar result was achieved by the Commonwealth Court in *Van Doren v. Mazurkiewicz,* 695 A.2d 967 (Pa. Commw. 1997). In *Van Doren,* the appellant claimed that the registration provisions of Megan's Law I constituted additional punishment and violated the double jeopardy and ex post facto clauses of the United States Constitution. The court adopted the analysis set forth by the Third Circuit Court in *Artway* and rejected the defendant's constitutional challenges. *Id.* at 975.

Defendant asserts that Megan's Law II added a lifetime registration requirement that enhances a sex offender's sentence by subjecting him to registration after he has served his full period of incarceration. A number of factors must be considered in determining whether the registration provisions of Megan's Law II impose punishment.

### a. *Intent*

As noted previously, the starting point of our analysis is whether the legislature's stated purpose is punishment. *Gaffney,* 557 Pa. at 333, 733 A.2d at 619. There is ample evidence that the legislature intended Megan's Law II primarily to serve the non-punitive purpose of enhancing law enforcement efforts. As in Megan's Law I, the legislative findings of Megan's Law II provide:

"9791. Legislative findings and declaration of policy

"(a) Legislative findings.—It is hereby determined and declared as a matter of legislative finding:

"(1) If the public is provided adequate notice and information about sexually violent predators and certain other offenders, the community can develop constructive plans to prepare themselves and their children for the offender's release. This allows communities to meet with law enforcement to prepare and obtain information about the rights and responsibilities of the community and to provide education and counseling to their children.

"(2) These sexually violent predators pose a high risk of engaging in further offenses even after being released from incarceration or commitments and that protection of the public from this type of offender is a paramount governmental interest.

"(3) The penal and mental health components of our justice system are largely hidden from public view and lack of information from either may result in failure of both systems to meet this paramount concern of public safety.

"(4) Overly restrictive confidentiality and liability laws governing the release of information about sexually violent predators have reduced the willingness to release information that could be appropriately released under the public disclosure laws and have increased risks to public safety.

"(5) Persons found to have committed such an offense have a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government.

"(6) Release of information about sexually violent predators to public agencies and the general public will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems so long as the information released is rationally related to the furtherance of those goals." 42 Pa.C.S. §9791.

In addition, the declaration of purpose contained in 9791(b) expresses that the purpose of the Act is to protect the safety and general welfare of the people of this Commonwealth:

"(b) Declaration of policy.—It is hereby declared to be the intention of the General Assembly to protect the safety and general welfare of the people of this Commonwealth by providing for registration and community notification regarding sexually violent predators who are about to be released from custody and will live in or near their neighborhood. It is further declared to be the policy of this Commonwealth to require the exchange of relevant information about sexually violent predators among public agencies and officials and to authorize the release of necessary and relevant information about sexually violent predators to members of the general public as a means of assuring public protection and *shall not be construed as punitive.*" 42 Pa.C.S. §9791. (emphasis added) We conclude that the stated legislative purpose in enacting the registration sections of Megan's Law II was regulatory and non-punitive.

### b. *Objective purpose*

Next, we must consider whether the objective purpose of the registration provisions of Megan's Law II is

punishment. *Gaffney,* 557 Pa. at 333-34, 733 A.2d at 619-20. The objective prong of the punishment test focuses on whether analogous measures have traditionally been regarded in our society as punishment and has three subparts: (1) whether the remedial purpose of the measure can explain all the adverse effects on those involved; (2) whether the measure has been historically considered punishment; (3) whether the measure serves both a remedial and a deterrent purpose. *Gaffney,* 557 Pa. at 334, 733 A.2d at 619.

The fundamental purpose of the registration provisions of Megan's Law II is to identify potential recidivists and to enable law enforcement agencies to keep records on sexual offenders. As noted by the Third Circuit Court of Appeals, by knowing where convicted sex offenders reside and when they move into a new neighborhood, law enforcement authorities will be in a better position to protect their communities:

"Here, the solely remedial purpose of helping law enforcement agencies keep tabs on these offenders fully explains requiring certain sex offenders to register. Registration may allow officers to prevent future crimes by intervening in dangerous situations . . . . And the means chosen—registration and law enforcement notification only—is not excessive in any way. Registration, therefore, is reasonably related to a legitimate goal: allowing law enforcement to stay vigilant against possible re-abuse." *Artway v. Attorney General,* 81 F.3d at 1265.

Thus, registration is a legitimate and necessary means to achieving a regulatory goal. Pennsylvania's registration provisions are narrowly tailored so that registration can be accomplished privately, without public no-

tification and societal opprobrium. While Megan's Law II requires lifetime verification for specified sexual offenders, the purpose of this requirement is legitimately related to the legislature's salutary purpose of protecting the community.

Moreover, registration has not been historically considered punishment; rather, "[r]egistration is a common and long-standing regulatory technique with a remedial purpose." *Artway,* 81 F.3d at 1264. Registration requires an offender to provide information to local law enforcement. The act of registering annually with a discrete government entity, which is not authorized to release information to the community at large, is not equivalent to stigmatization or banishment.

### c. *Effects*

Finally, we must consider whether the effects of registration are so harsh that, as a matter of degree, they constitute punishment. *Gaffney,* 557 Pa. at 326-27, 733 A.2d at 621.

Registration does not impose a substantial disability or restraint on sex offenders. It does not restrict the offender's movements within or outside the community, but merely requires certain sex offenders to appear annually at the local state police barracks to verify his or her residence. The practical effect of registration does not impact an offender's ability to become gainfully employed nor does it impair an offender's ability to obtain housing. While the registration provisions pose the inconvenience of having to verify one's residence in person, the act of registering is essentially administrative.

Furthermore, public dissemination of registration information is not provided for in Megan's Law II. Registration information is given to a discrete government entity that is not authorized to release the information to the community at large. By requiring sex offenders to register annually with the local police, Megan's Law II does not inhibit an offender's rehabilitation. The simple act of registering does not prevent a sex offender from reintegrating into society.

Although there may be discomfort and inconvenience in registration, the burdens of registration are not so onerous or extreme as to amount to punishment. See *Verniero,* 119 F.3d at 1101.

## CONCLUSION

We conclude that the sexually violent predator provisions of Megan's Law II violate defendant's right to due process by subjecting him to a determination of his status as a sexually violent predator by a standard of proof which is less than beyond a reasonable doubt. We therefore determine that Megan's Law II is unconstitutional as it pertains to the determination of sexually violent predators. Because we view the registration requirements of Megan's Law II as essentially remedial and non-punitive, we find no constitutional violation with respect to those provisions.

## ORDER

And now, September 18, 2001, following argument and upon consideration of briefs, it is hereby ordered and decreed that defendant James Bannigan's motion

for extraordinary relief to challenge the constitutionality of the violent predator provisions of Pennsylvania's Megan's Law, to suppress evidence, to bar ex post facto prosecution and to bar a second prosecution for the same offense is granted in part and denied in part.

It is ordered and decreed that the sexually violent predator/notification provisions of Megan's Law II are unconstitutional.

It is further ordered and decreed that registration provisions of Megan's Law II do not violate the double jeopardy or ex post facto clauses of either the United States or Pennsylvania Constitutions.