J-S14037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERRY BRANCH, JR. | : | |
| | : | No. 1011 EDA 2017 |
| Appellant | : | |

Appeal from the Judgment of Sentence September 22, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002170-2014

BEFORE:   OTT, J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY RANSOM, J.:                    **FILED APRIL 26, 2018**

Appellant, Jerry Branch, Jr., appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for involuntary deviant sexual intercourse ("IDSI") with a person less than sixteen years of age, sexual assault, and corruption of minors.[1]  We affirm Appellant's convictions, but we vacate the judgment of sentence and remand for resentencing.

Beginning when the victim, J.K. ("the Victim"), was thirteen years old, Appellant provided him with beer and marijuana.  Notes of Testimony (N. T.), 6/14/16, at 28, 33-35.  Appellant was a co-worker of the Victim's mother.  On five separate occasions, each occurring in Philadelphia, the

---

[1] 18 Pa.C.S. §§ 3123(a)(7), 3124.1, and 6301(a)(1), respectively.

---

\*   Retired Senior Judge assigned to the Superior Court.

Victim awoke during the night to realize that his penis was in Appellant's mouth and that Appellant was "right in front" of the Victim, on his knees. Appellant did not say anything at the time, because he was embarrassed. *Id.* at 37.

The first occasion occurred at Appellant's home. *Id.* at 33. The Victim became drunk on alcohol provided by Appellant and passed out on the couch in the living room. *Id.* He awoke at about 2:00 a.m. "with [his] penis in [Appellant's] mouth." *Id.* Although two other minors, including the Victim's friend, P.G., had been drinking alcohol with Appellant and the Victim earlier that evening, the other two had left, and the Victim was the only one who had slept at Appellant's house. *Id.* at 33, 35.

The second incident occurred at the Victim's residence. *Id.* at 37. The Victim was sober but tired after a long trip, and he and the Appellant fell asleep in the family room. *Id.* at 38-39. Appellant again molested the Victim at approximately 2:00 a.m. *Id.* at 39.

The third incident was at Appellant's home. *Id.* at 40. After a party, the Victim and two other minor males, including P.G., slept downstairs. *Id.* at 40. The Victim was drunk and fell asleep on the couch in the living room. *Id.* at 40-41. At around 2:00 a.m., Appellant "proceeded to do the same thing." *Id.* at 41.

The fourth incident was again at Appellant's home, but the Victim was sleeping on a couch in Appellant's bedroom. *Id.* at 44. P.G. was asleep in

the bed in the same room. *Id.* The Victim was awakened at 1:00 a.m., "and it was the same thing again." *Id.*

The fifth and final incident, when the Victim was "about 16" years old, occurred in Appellant's new home. *Id.* at 45. After a party, the Victim, who had been drinking beer, was the only invitee to stay overnight. *Id.* at 46. At about 2:00 a.m., Appellant made the Victim touch Appellant's penis, then insisted that they go to Appellant's bedroom; once in the bedroom, Appellant made the Victim manually stimulate him. *Id.* at 46-47.

In Fall 2013, the Victim broke down and told his girlfriend, D.S., that Appellant had molested him for years. *Id.* at 52-53, 141.

During trial, the Victim testified that he had told P.G. about the abuse after the fifth assault. *Id.* at 71-72; N. T., 6/15/16, at 11. P.G. testified that the Victim never specifically told him the nature of the abuse and instead recalled that the Victim had claimed there had been an "altercation" between the Victim and Appellant. When asked if the Victim said that the altercation "was sexual," P.G. answered affirmatively. The Victim further testified that he was no longer dating D.S., but D.S. testified that she was the Victim's current girlfriend. N. T., 6/14/16, at 53, 182.

At the close of Appellant's trial, his counsel requested that the trial court issue the "false in one, false in all" jury instruction, Pennsylvania Suggested Standard Criminal Jury Instructions ("SSJI (Crim.)") 4.15, arguing that the Victim's trial testimony was contradicted by that of other

witnesses. The trial court denied the request but gave the following general jury instruction on the credibility of witnesses:

> So how do you evaluate the witnesses? How do you decide credibility? I'm going to give you a list of things that you should consider, and as I do this, you'll recognize that these are things that you already use in your [everyday] life. You're constantly judging the credibility of people. People that you see speaking on television, people that you speak to face to face.
>
> As judges of the facts, you are the sole judges of the credibility of the witnesses and their testimony. This means you must judge the truthfulness and the accuracy of each witness' testimony and decide whether to believe all, or part, or none of that testimony. The following are some of the factors that you may and should consider when judging credibility and deciding whether or not to believe testimony.
>
> First, was the witness able to see, hear, or know the things that that witness testified about? How well could the witness remember and describe those things? Did the witness testify in a convincing manner? How did the witness look, act and speak while testifying? Was the testimony uncertain, confused, self-contradictory, evasive?
>
> Did the witness have any interest in the outcome of the case? Did the witness have any bias, any prejudice, any motive that might have affected that witness' testimony? How well does the testimony of the witness fit with the other evidence in the case, including the testimony of other witnesses. Was it contradicted or supported by the other testimony and evidence? Does it make sense?
>
> If you believe that some part of the testimony of a witness is inaccurate, consider whether that inaccuracy casts doubt upon the rest of the witness' testimony. This may depend on whether or not the witness has been inaccurate in an important matter, or simply some minor detail, as well as any possible explanation. For example, did the witness make an honest mistake? Did they simply forget, or deliberately falsify?
>
> While you are judging the credibility of each witness, you are likely to be judging the credibility of other witnesses and evidence. If there is a real irreconcilable conflict, it is up to you

to decide which, if any, conflicting testimony or evidence to believe.

As sole judges of credibility and fact, you are responsible to give the testimony of every witness and all of the other evidence whatever credibility, whatever weight you think it deserves.

What about conflicting testimony, where there is a conflict in the testimony, where the witnesses testify but their testimony diverges on some issue? The jury has the duty of deciding which testimony to believe. So you should first try to reconcile, that is, fit together any conflicts in the testimony, if you can fairly do so.

Discrepancies and conflicts between the testimony of different witnesses may cause you to disbelieve some or all of their testimony. Remember, two or more persons witnessing an incident may see it happen differently, or may hear it happen differently. Also, it is not uncommon for a witness to be innocently mistaken when recollecting how something happened.

If you cannot reconcile a conflict in the testimony, it is up to you to decide which testimony, if any, to believe, and which testimony to reject as being untrue or inaccurate.

In making this decision, consider whether the conflict involves a matter of importance or merely some detail. And whether the conflict is brought about by an innocent mistake or by an intentional falsehood. You should also keep in mind the other factors already discussed which go into deciding whether or not to believe a witness.

In deciding which of conflicting testimony to believe, you should not necessarily be swayed by the number of witnesses on either side. You may find the testimony of a few witnesses, even the testimony of just one witness, is more believable than the opposing testimony of a greater number of witnesses. On the other hand, you should also consider the extent to which conflicting testimony is supported by other evidence.

N. T., 6/15/16, at 111-15. Following deliberations, the jury convicted Appellant on all counts.

During his sentencing hearing in September 2016, Appellant presented evidence that he had no prior criminal record, had graduated college and

attended graduate school, and was employed. N. T., 9/22/16, at 16-17, 31, 33-35. He was sentenced to an aggregate of fifteen to thirty-five years of confinement. In explaining the sentence, the trial court stated that Appellant "destroyed lives on one side of the courtroom and has shocked, disappointed, and destroyed lives on the other side of the courtroom." *Id.* at 41. The remainder of the reasons that the trial court gave on the record at the sentencing hearing were, in their entirety, as follows:

> **[DEFENSE COUNSEL]:** I'm asking for a period of 25 years of reporting probation.
>
> **THE COURT**: Yeah, that's ridiculous.
>
> This is not an offense that you get probation for. At one point, he was offered the opportunity to plead and -- but he wouldn't accept responsibility.
>
> Somebody has to explain to him that until he accepts responsibility, the parole board won't let him out. So at some point, he's going to have to say, "This is what I did. I'm sorry that I did it." But he hasn't done it so far. I see no reason to mitigate [Appellant]'s sentence.
>
> **Considering the impact on the [V]ictim and family**, I'm sentencing [Appellant] according to the guidelines within the aggravated range.

*Id.* at 42-43 (emphasis added).[2]

Appellant filed a motion for reconsideration of sentence in October 2016. In January 2017, the trial court granted Appellant leave to amend his

---

[2] After sentence was imposed, defense counsel protested that Appellant had no criminal record; the trial court threatened to have the sheriff remove defense counsel from the courtroom. N. T., 9/22/16, at 44.

post-sentence motion. In February 2017, Appellant filed a post-sentence motion challenging the weight of the evidence and requesting a new trial.

During the hearing on both motions, the trial court stated that it was denying the motion for reconsideration of sentence, because:

> [Appellant] was hardly a gentleman. He destroyed the life of the [V]ictim. He destroyed the lives on one side of the courtroom, as I explained at sentencing, and disappointed and surprised the people on the other side of the courtroom by his abuse of the complainant.
>
> You weren't here for the trial[3] so I don't expect you to appreciate the seriousness of the harm he did in this case. But as I explained at sentencing, much of his sentence is based on the damage that he did to the complainant. . . . No, you couldn't understand it unless you were here in the courtroom and watched him testify. He was destroyed by what happened to him. It took a lot of courage to come in here and talk about it. He's spent a long time trying to figure out what his sexuality was because of the homosexual nature of these acts.
>
> As I pointed out with regard to one of these sentences, I gave him the statutory maximum; however, I would have liked to have given him more, but the most I could give him was 5 to 10 years [for sexual assault].
>
>                         \*     \*     \*
>
> No, **I don't care about the people who stand up** [in support of Appellant] at the sentencing. They are in denial. But he's in denial as well, which I pointed out at his sentencing. I explained to him that the parole board policy is he's not going to get out until he admits he did it, says he's sorry, and he'll never do it again. And he's never said that in this courtroom. I don't know if some day he'll say it in front of the parole board.

---

[3] Appellant was represented by different counsel for trial and post-sentence motions.

* * *

Nothing indicates recidivism more than that attitude. He has a problem. He doesn't acknowledge it. He's not going to work on it because as far as he's concerned he doesn't have a problem.

And the parole board takes the same approach.

So do you have anything extra additionally you want to throw in because so far you're not convincing me.

* * *

**I don't care** about [the individuals who testified at sentencing for Appellant]. **I don't care** what their level of acceptance is. But I do care about the [perpetrator's,] and [Appellant] has never accepted what he did, never acknowledged what he did. Twelve people agreed with the [Victim] that this is what your client did. I think they had a good basis for their verdict.

And unless you have something additional. . . .

N. T., 2/22/17, at 11-15 (emphasis added). The trial court also denied the post-sentence motion challenging the weight of the evidence. *Id.* at 16-17.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a responsive opinion.

Appellant raises three issues for our review:

I. Were the verdicts against the clear weight of the evidence where the [Victim]'s testimony was patently incredible in that he claimed each assault took place at the exact same time and in the exact same manner, while other individuals were in the same room or nearby and, additionally, where the [Victim]'s credibility was impeached by other witnesses who contradicted the [Victim]'s testimony regarding the nature of his disclosure, conversations they had about the abuse, and the [Victim]'s characterization of his relationship with his girlfriend?

II. Did the trial court abuse its discretion in failing to give Appellant's requested "false in one, false in all" jury instruction

where the testimony presented at trial clearly supported the issuance of the requested instruction?

III. Did the [trial] court abuse its discretion in sentencing Appellant to a manifestly excessive aggregate sentence of 15 to 35 years of imprisonment where the record discloses that the court focused solely on the serious nature of the crimes and their impact on the complainant while failing to consider all other relevant sentencing factors under the sentencing code?

Appellant's Brief at 5 (trial court's answers omitted).

## Weight of the Evidence

Appellant first asserts that the verdicts were against the weight of the evidence. Appellant's Brief at 11. Appellant alleges that the Victim's testimony was "patently unreliable," because --

[the Victim] claimed each assault took place at the exact same time and in the exact same manner, while other individuals were in the same room or nearby and, additionally, where the [Victim]'s credibility was impeached by other witnesses who contradicted the [Victim]'s testimony regarding the nature of his disclosure, conversations they had about the abuse, and the [Victim]'s characterization of his relationship with his girlfriend.

*Id.* Appellant requests a new trial "in the interests of justice." *Id.*

Our standard of review for a challenge to the weight of the evidence is as follows:

The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses.

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight

- 9 -

of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Talbert***, 129 A.3d 536, 545–46 (Pa. Super. 2015) (internal brackets, citations, and quotation marks omitted; some additional formatting).

Appellant alleges that the Victim's testimony was unreliable, because he allegedly "claimed each assault took place at the exact same time and in the exact same manner." Appellant's Brief at 11. However, a review of the record indicates that, during his trial testimony, the Victim testified that the assaults occurred at different addresses, in different rooms, at different times of day, with a different number of people present, and with the Victim experiencing different levels of inebriation or sobriety. Three of the assaults occurred at Appellant's former home, one occurred at the Victim's house, and one occurred at Appellant's new residence. N. T., 6/14/16, at 33, 37, 40, 44-45. Three of the incidents occurred downstairs in a living room or family room, one occurred in an upstairs bedroom, and one began downstairs but moved to an upstairs bedroom. ***Id.*** at 33, 38-39, 44, 46-47. Four of the assaults began at approximately 2:00 a.m., but one began at 1:00 a.m. ***Id.*** at 33, 39, 41, 44, 46-47. In three incidents, no one else was present in the room; in one, two other minor males were in the same room; in another one, one other minor male was in the same room. ***Id.*** at 33, 35,

38-40, 44, 46. For three incidents, the Victim was drunk – once to the point of passing out, but, in another, he was not. *Id.* at 33, 38-41, 46.[4] This level of detail in the Victim's testimony about the differing circumstances of each assault not only contradicts Appellant's allegation that each assault was exactly the same, occurring "in the exact same manner," Appellant's Brief at 11, but the specificity of the Victim's testimony bolsters its reliability.

Appellant also argues that no one would commit a sexual assault in proximity to other individuals. Appellant's Brief at 11, 13. This argument is appropriate for the jury, as fact-finders and adjudicators of credibility, not for this Court. *Talbert*, 129 A.3d at 545–46. Moreover, Pennsylvania case law provides examples where a defendant committed a sexual assault in proximity to the victim's family or friends, demonstrating that the circumstances described by the Victim are possible. *See, e.g.*, *Commonwealth v. Halye*, 719 A.2d 763, 795 (Pa. Super. 1998) (*en banc*) (defendant caught performing oral sex on minor by parents who were in the next room).

Additionally, Appellant maintains that the Victim's credibility was impeached by other witnesses, particularly P.G. and D.S. Appellant's Brief at 11, 13. Reviewing the record, we find no discrepancy between the Victim's testimony and that of P.G. The Victim testified that he confided in

---

[4] For the fourth incident, the Victim did not testify as to whether he had been drinking alcohol. N. T., 6/14/16, at 44.

P.G. that Appellant abused him, and P.G. testified that the Victim told him that abuse occurred but not the specific nature of the abuse. N. T., 6/14/16, at 71-72; N. T., 6/15/16, at 11. We cannot concluded that the jury abused its discretion by not finding the Victim's testimony "patently unreliable" based upon a difference in phrasing.

While there was a minor discrepancy between the testimony of the Victim and of D.S. as to the current nature of their relationship, nothing about this inconsistency undermined the key fact that the Victim told D.S. about the long-term abuse. N. T., 6/14/16, at 52-53, 182-84; Trial Court Opinion (TCO), 6/29/17, at 4.

Also, P.G. and D.S. corroborated one another. As each experienced the Victim's revelation at different times and locations, their descriptions of what exactly the Victim told them varied slightly, but both indicated that the Victim told them that he had been sexually assaulted by Appellant. N. T., 6/14/16, at 183-84; N. T., 6/15/16, at 11; TCO at 4-5.

Moreover, this Court cannot and will not second-guess the conclusions of the fact-finder as to what evidence to believe or to distrust and whether to find the witnesses credible. *Talbert*, 129 A.3d at 545–46. None of the slight incongruities indicated by Appellant – even if they were all supported by the record -- are significant enough, alone or in combination, for us to conclude that the trial court abused its discretion in weighing the evidence and accepting the jury's verdict.

**Jury Instruction**

Next, Appellant contends that "the trial court abused its discretion in failing to give Appellant's requested 'false in one, false in all' jury instruction where the testimony presented at trial clearly supported the issuance of the requested instruction." Appellant's Brief at 14.

"[O]ur standard of review when considering the denial of jury instructions is one of deference — an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Baker*, 24 A.3d 1006, 1022 (Pa. Super. 2011) (citation omitted).

"'False in one, false in all' is a concept for assessing the weight of evidence. . . . It currently means that a jury may disregard the testimony of a witness if the jury believes that witness **deliberately**, or **willfully** and **corruptly**, testified falsely about a material issue." *Commonwealth v. Vicens-Rodriguez*, 911 A.2d 116, 117 (Pa. Super. 2006) (emphasis added) (footnote omitted).

Here, the trial court stated that there was no evidence on record that the Victim deliberately falsified his testimony, making the general jury instruction on the credibility of witnesses accurate. TCO at 5-6. Appellant argues that the trial court should have allowed the fact-finder to determine whether the Victim had deliberately testified falsely. Appellant's Brief at 15.

Looking at the trial court's instruction on the issue of false or inconsistent testimony, quoted in its entirety above, we see that it

encompasses a large portion of the "false in one, false in all" charge – that being the instruction to consider all relevant factors in considering credibility. Specifically, it explains to the jury how to decide credibility and that it is the sole judge of credibility, lists the factors that it may consider when judging credibility, distinguishes between a witness making an innocent mistake or forgetting and a witness deliberately falsifying, and explains the relationship between the credibility of each witness to the credibility of other witnesses and evidence. N. T., 6/15/16, at 111-15. Thus, it was not reversible error for the trial court to decline to give the "false in one, false in all" charge, because the other aspects of credibility were thoroughly discussed. *See Vicens-Rodriguez*, 911 A.2d at 120.

### Individualized Sentencing

Finally, Appellant maintains that the trial court --

abused its discretion in sentencing [him] to a manifestly excessive aggregate sentence of 15 to 35 years [of] imprisonment where the record discloses that the court focused solely on the serious nature of the crimes and their impact on the [Victim] while failing to consider all other relevant sentencing factors under the Sentencing Code.

Appellant's Brief at 22.

This claim involves the discretionary aspects of sentencing, and consequently is not appealable as of right. *Commonwealth v. Colon*, 102 A.3d 1033, 1042–43 (Pa. Super. 2014). Therefore, before we exercise jurisdiction to reach the merits of Appellant's issue, we must engage in a four-part analysis to determine: (1) whether the appeal is timely; (2)

- 14 -

whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) whether the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code. *Id.* Only if the appeal satisfies each of these four requirements may we proceed to decide the substantive merits of the case. *Id.*

Instantly, Appellant filed a timely notice of appeal and properly preserved his issue in his post-sentence motion, and his brief contains a concise statement of the reasons on which he relies. Appellant's Brief at 21. In that concise statement of the reasons relied upon for allowance of appeal, Appellant contends that the sentence imposed is "excessive" and "unduly harsh," because the trial court failed to consider his "lack of criminal history and employment and academic achievements." *Id.* "An averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question." *Commonwealth v. Bricker*, 41 A.3d 872, 875 (Pa. Super. 2012) (citation and internal brackets omitted). Thus, we will consider the substantive merits of Appellant's sentencing claim.

A trial court has discretion when it sentences a defendant:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record,

- 15 -

that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2015).

Appellant now maintains that the trial court abused its discretion when it sentenced him to an aggregate sentence of fifteen to thirty-five years, when the standard range of the sentencing guidelines for IDSI, Appellant's most serious offense, was forty-eight to sixty-six months. Appellant's Brief at 22. He insists that the trial court focused only on the seriousness of the crime and its impact on the Victim and ignored "substantial" mitigating evidence, including that Appellant "had never previously been arrested, had attended college, and had maintained gainful employment." *Id.* at 22-23 (citing N. T., 9/22/16, at 16-17).[5]

A judge's statement of the reasons for imposing a particular sentence "must clearly show that he has given individualized consideration to the character of the defendant." *Commonwealth v. Ritchey*, 779 A.2d 1183, 1187 (Pa. Super. 2001) (citation omitted). "[I]t is an abuse of discretion when the nature of the criminal act is used as the sole basis for the determination of the length of sentence." *Commonwealth v. Luketic*, 162 A.3d 1149, 1165 (Pa. Super. 2017) (citation and internal brackets and quotation marks omitted); *accord Commonwealth v. Wright*, 600 A.2d

_____

[5] The Commonwealth presents no argument for this issue, beyond relying upon the trial court opinion. Commonwealth's Brief at 14.

1289, 1291 (Pa. Super. 1991) ("a sentencing court abuses its discretion when it considers the criminal act, but not the criminal himself" (citation and internal quotation marks omitted)).

After careful review, we are constrained to conclude that the trial court abused its discretion when imposing the above sentence on Appellant. In its remarks during the hearings for sentencing and for reconsideration, quoted above in their entirety, the trial court explicitly stated that it only considered the impact upon the Victim and his family and it did not care about the testimony of the people who spoke in support of Appellant during his initial sentencing hearing. N. T., 9/22/16, at 42-43; N. T., 2/22/17, at 13, 15.

In its opinion, the trial court's explanation for imposing this sentence, in its entirety, is:

> In this particular instance, the [trial c]ourt applied an appropriate sentence. The court, **relying on the impact [Appellant] had on the [V]ictim**, stated that "[Appellant] destroyed lives on one side of the courtroom and has shocked, disappointed, and destroyed lives on the other side of the courtroom." N. T., 9/22/16, [at] 41. The [c]ourt further went on to explain that because of the impact on the [V]ictim and family, "[The trial court is] sentencing [Appellant] according to the guidelines within the aggravated range." [**Id.** at] 43. Because the reasoning for the aggregate sentence was explained on the record, the sentence of [Appellant] was an appropriate one within the aggravated range.

TCO at 7 (emphasis added) (some formatting).

Nowhere does the trial court indicate that it gave individualized consideration to Appellant's personal history or background, including his educational and employment history and his lack of a prior criminal record.

- 17 -

N. T., 9/22/16, at 41-43; N. T., 2/22/17, at 11-15; TCO at 7; *see also* Appellant's Brief at 22-23; N. T., 9/22/16, at 16-17, 31, 33-35; *Ritchey*, 779 A.2d at 1187. The trial court focuses exclusively on the seriousness of the crime. N. T., 9/22/16, at 41-43; N. T., 2/22/17, at 11-15; TCO at 7; *see also Ritchey*, 779 A.2d at 1187. By considering only the criminal act and not the criminal, the trial court abused its discretion. *Luketic*, 162 A.3d at 1165; *Wright*, 600 A.2d at 1291. For this reason, we vacate Appellant's judgment of sentence and remand for resentencing.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/26/18